# Richmond

## Edwell D. Coffey v. Commonwealth of Virginia.

January 10, 1949.

Record No. 3429.

Present, All the Justices.

*Wm. Kinckle Allen*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Henry T. Wickham, Special Assistant to the Attorney General*, for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

About 8 p. m., on August 9, 1947, Mrs. Frank Floyd, with her sixteen-year old daughter, Libby, were walking from their home to Pentecostal Church, near Mountain View schoolhouse, in Rockbridge county. Just before they reached the church, and while they were walking on the

left-hand side of the hard-surfaced road, a car going in the opposite direction, swerved to its right, struck and killed Mrs. Floyd. The driver of the car failed to stop and continued up the road. Edwell D. Coffey was accused of driving the car, indicted for involuntary manslaughter, convicted and sentenced to three years in the penitentiary.

The accused concedes that the evidence for the Commonwealth is sufficient to sustain the verdict; hence only that part of the evidence pertinent to the assignments of error will be discussed. He also concedes that the car involved in the accident was owned by him, and that he and Edward Southers were its only occupants at the time of the accident. The only controverted issue was whether the accused was driving the car at the time it struck Mrs. Floyd.

W. B. Chittum, sheriff of Rockbridge county, was called as a witness for the Commonwealth and stated that he arrived at the scene within forty-five minutes after Mrs. Floyd was struck, and that immediately thereafter he was informed that the car involved in the accident was parked about seven-tenths of a mile north of the scene. He went immediately to the parked car and found the accused sitting on the right hand side of the front seat and Edward Southers sitting under the steering wheel of a parked truck facing the car involved in the accident. He arrested both and at the time they were "very much intoxicated," the accused was intoxicated "but handled himself better than Southers did." The accused "staggered some but when they got to jail he walked in unassisted and what little talking he did was very good. He was not like a person so drunk he did not know what he was doing." The accused and Southers told this witness that they did not remember who was driving the car at the time it struck Mrs. Floyd.

On cross-examination the witness was asked about a statement that Southers had made to him and the attorney for the Commonwealth, in the absence of the accused, on Sunday, the day after the accident, to which the witness replied:

"This is not a regular statement. I would ask him a question and write down what he would tell me. I have

here: 'We were only ones in the car.' He said, 'I drove to Aasheims and drove away from Aasheim's—got out of car to take a leak near bridge. Both of us got out of car then. Taken drinks behind the car. Went behind car to urinate. I started drinking with Allen. Don't remember getting back in car. Don't remember who drove the car away from bridge. Remember getting out on right side of car when it stopped.' That is all."

The bridge to which Southers referred in this statement was the South River bridge. This witness further stated that when he found Southers in the truck sitting under the steering wheel he was wet, but he did not tell him on Sunday afternoon how he got wet, but he did later. Southers told him that after the accident he (Southers) got out of the car and went up over the bank into the woods. The attorney for the accused asked "did Southers tell you why he went up into the woods," to which the witness replied: "He (Southers) said when they stopped the car that he rolled out on the right-hand side and Mr. Coffey came around the front of the car," and said "Let's get out of here," and said "If anyone asks who was driving the car—" The objection of the accused to a statement alleged to have been made by him was overruled and the witness continued:

"Well, that is all. In other words, he did go up in the woods, made the statement he went up in the woods a piece; that he thought Coffey was following him, seemed like he heard a scrambling at the bank—this particular bank is right along the ditch and I would say around four feet and a half high and a barbed wire fence laying down, and right at the place that Southers went up the bank he stated he thought Coffey was following him, went up in the woods a piece further and started calling him, kept on wandering and went on up to the top of the hill and at that time it started raining; that he came back over the hills in the woods and saw these lights down on the road so he came back and crawled up in this truck that had the lights on it."

On re-direct examination the witness stated that Southers

had made two different statements to him, one on Sunday afternoon and one on Tuesday morning. Thereupon, the attorney for the Commonwealth said to the witness:

"Tell the jury what conversation you had with Southers at that time." (Tuesday morning). The accused objected to the question and answer, on the ground that he was not present when the statement was made. This objection was overruled and the witness was permitted to tell the jury in detail what Southers had said to him on Tuesday, three days after the accident. The substance of this conversation was (1) that Southers had sent the sheriff word he desired "to tell the truth about it;" (2) that he had met Sam Allen and the accused in the afternoon of August 9; that they had parked the accused's car near Whiteside farm, while the three of them had gone to Lexington to buy whiskey; that they ran out of gas, had a flat tire, but finally returned to the accused's parked car and that he drove it from there to Coffey's home, there he got in Sam Allen's car and left Coffey. A little later Coffey drove his car to Southers' shop and then he got in the car with Coffey, drove to Sam Allen's house where all three had a drink, and from there he had driven to Aasheim's home, where he, Coffey, and Aasheim drank from the same bottle; from Aasheim's he drove Coffey's car to Marl Creek bridge, which is a short distance from South River bridge, where he and Coffey got out of the car and took another drink. At Marl Creek bridge the accused became irritated because Southers would not promise to repair his car on Sunday and said "I will drive my own damn car;" the accused then got in the car, with Southers on the front seat, and drove past Mountain View schoolhouse, and immediately after the car had struck Mrs. Floyd, Southers remarked "you have killed someone," to which the accused replied "I have hit someone." When the car stopped Southers got out on the right-hand side and went into the woods.

This detailed statement of what Southers had said to the sheriff in the absence of the accused was permitted to remain with the jury until during the examination of Southers

himself as a witness for the Commonwealth when the trial court requested a conference with the attorneys in chambers. In this conference the judge stated that he had changed his opinion and had reached the conclusion that he had committed error in permitting the sheriff to tell the jury what Southers had told him on Tuesday in the absence of the accused. Thereupon the attorney for the Commonwealth said:

"If the court feels it has committed error it would be well to declare a mistrial at this stage of the proceedings rather than going any further."

The attorney for the accused immediately moved for a mistrial which was overruled, the judge stating "I don't think it is an error to be reversed on if nothing else happens in the case."

On re-entering the court room, the trial judge, in the presence of the jury, said:

"Gentlemen of the jury, just a short time ago the sheriff was on the stand. He was examined by the Commonwealth Attorney's assistant and then he was cross-examined and the court permitted the Commonwealth Attorney to ask him about the conversation he had with the witness, Southers, on Tuesday. Neither the conversation on Sunday nor the conversation on Tuesday was in the presence of the accused. I ruled that he could ask the question. I find I was in error in permitting that testimony to go to you and you will remember what it was. He said that the accused was driving and he was not driving. That was an error on my part and I am going to strike that part of the testimony from the record and ask you to disregard it."

The accused contends, (1) that the admission of the sheriff's testimony as to what Southers told him on Tuesday, August 12, was so highly prejudicial that it could not be cured by the court's instruction to disregard it; (2) that the court's instruction to disregard the testimony was not clear and comprehensive, and, therefore, the error was not cured.

It is the right and duty of a trial court to correct

an error arising from the erroneous admission of illegal evidence when the error in its admission is discovered before the trial is concluded. The striking or the withdrawal of such evidence from consideration of the jury must be made in positive, comprehensive and explict terms. *Taylor* v. *Commonwealth*, 122 Va. 886, 94 S. E. 795; *Washington-Virginia R. Co.* v. *Deahl*, 126 Va. 141, 100 S. E. 840; *Norfolk, etc., R. Co.* v. *James*, 147 Va. 178, 136 S. E. 660; 5 C. J. S., Appeal & Error, sec. 1737a, p. 1029.

In *Washington, etc., Railway* v. *Ward*, 119 Va. 334, 339, 89 S. E. 140, 142, Judge Kelly, speaking for the court, said:

"A judgment ought not to be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* courts."

However, the exception to this rule is that the admission of incompetent evidence is reversible error notwithstanding the fact that the trial court, after its admission, instructed the jury to disregard it, if such illegal evidence was so impressive that it probably remained on the minds of the jury and influenced their verdict. *Oates* v. *United States*, 147 C. C. A. 207, 233 F. 201; 5 C. J. S. p. 1030.

It is difficult to determine just what testimony the court meant to strike or withdraw from consideration of the jury. In its instruction to disregard it, the court referred to a question asked by the attorney for the Commonwealth about the conversation on Tuesday and to the statements Southers made, in the absence of the accused, to the sheriff on Sunday and on Tuesday, and said:

"I ruled that he could ask the question. I find I was in error in permitting that testimony to go to you and you will remember what it was. He said that the accused was driving and he was not driving. That was an error on

my part and I am going to strike that part of the testimony from the record and ask you to disregard it."

Without further discussion, it is sufficient to say that the instruction to the jury to disregard the illegal testimony was not clear. It was not as direct, positive or comprehensive as it should have been. However, a careful study of the evidence convinces us that if we disregard all of the statements made by Southers to the sheriff and his deputies on Tuesday and all of the testimony of Southers himself, the jury would not have been justified in finding a different verdict.

Frank Ramsey was the first witness who saw the accused in his car after the accident. At that time the accused "was laying over to the right hand door" on the front seat, and when he raised up he was under the steering wheel. Just at that moment Garland Smith drove up and saw the accused lying down on the front seat and raised up holding to the steering wheel and sitting under it, and at the same time the accused said, "Ain't nobody run." Leonard Tyree testified that the accused was sitting in the middle of the front seat when he arrived. Frank Ramsey also said that after the accused raised up under the steering wheel that he got in the car from the left hand side and that the accused moved over to the right of the front seat to give him room to sit down. Other witnesses, including the sheriff, testified that they saw the accused sitting on the right side of the front seat. No one testified that the accused did not move over to give Frank Ramsey room to sit down under the steering wheel.

The substance of the testimony of the accused himself is that he was so drunk he did not remember anything clearly from the time he parked his car near Whiteside farm. He did not remember who was driving the car, but insisted that he was not driving because he was too drunk to drive.

The sheriff and others testified that while the accused was drunk he "had not passed out," he walked fairly well, "he talked very good and was not like a person so drunk he

did not know what he was doing." He at the time answered questions of the sheriff and others intelligently.

The sheriff, in response to a question by the attorney for the accused, said that Southers told him that when the car stopped after the accident, he (Southers) immediately rolled out on the right side which he very probably would not have done if he had been driving the car. This answer of the witness was responsive to the question asked by the attorney for the accused and hence is admissible evidence.

If all the evidence erroneously admitted, as well as the testimony of Lorena Clark, is disregarded, the only reasonable conclusion to be drawn from the remaining evidence is that the accused was driving his own car at the time it struck Mrs. Floyd. The fact that the jury fixed the punishment of the accused for the commission of this horrible and inexcusable crime at only three years' confinement in the penitentiary reveals that it was not unduly influenced by the admission of the illegal testimony.

The accused contends that the trial court committed error in permitting the Commonwealth to prove that he had been convicted of a felony in Rockbridge county on May 6, 1936.

The accused was asked had he ever been convicted of a felony, to which he replied "Not that I know of." He was asked the specific question, was not he convicted of a felony on May 6, 1936, on a charge of hit and run, to which he replied "No. Now that is a mistake." Thereupon, he was excused from the stand and the clerk of the court was called, and the following order was read by him:

"Commonwealth of Virginia, plaintiff, against Edwell Coffey, defendant. Indictment for failure to stop at scene of an automobile accident.

"This day came the attorney for the Commonwealth for this county, and the defendant in discharge of his recognizance, and being arraigned plead guilty to the indictment whereof he had been charged and threw himself upon the mercy of the court without the intervention of a jury. It is therefore considered by the court that the defendant

Edwell Coffey be fined the sum of twenty-five dollars and confined in the jail of this county for thirty days. It is further ordered that the Commonwealth of Virginia recover of the said Edwell Coffey the fine of twenty-five dollars aforesaid and the costs in this behalf expended. It is further ordered that jail sentence be suspended upon condition of good behavior for twelve months and the payment of said fine and costs."

The accused contends that the judgment of conviction is conclusive proof that it was for a misdemeanor and not a felony. In support of this contention it is claimed that where a court tries a case without a jury, upon a plea of guilty, the order must show that the plea was tendered in person by the accused and that the attorney for the Commonwealth consented thereto. The provisions of Code, section 4900, does require this to be done, but in *Dixon* v. *Commonwealth*, 161 Va. 1098, 172 S. E. 277, it was held that section 8 of the Constitution of Virginia "makes it mandatory that, whenever an accused pleads guilty to the whole of any indictment, the court shall try the case without the intervention of a jury," and that that part of the statute which is in conflict with section 8 of the Constitution was invalid. See *Cottrell* v. *Commonwealth*, 187 Va. 351, 46 S. E. (2d) 413.

The statute, section 58 of the Motor Vehicle Code, as amended by Chapter 265 of the Acts of 1934, in effect in 1936, declared it to be a felony for a motor vehicle driver to fail to stop at the scene of the accident, whether such accident resulted in injury to any person or damage to property.[1] The accused waived introduction of the indictment. However, the order itself shows that the plea of guilty was made to an indictment charging him with "failure to stop at the scene of an automobile accident," which offence, under the statute then in effect, was a felony. It has been consistently held in this jurisdiction that a felony

[1] This section was amended in 1938, Chapter 302, making it a misdemeanor "if such accident result(s) only in damage to property."

is an offence which *may be, not necessarily must be*, punishable by death or confinement in the penitentiary.

In *Pinn* v. *Commonwealth*, 166 Va. 727, 186 S. E. 169, we said:

"The offence with which she was charged, being *punishable* by confinement in the penitentiary, was a felony although she, in fact, received a less punishment." *Fletcher* v. *Commonwealth*, 163 Va. 1007, 175 S. E. 895, 95 A. L. R. 1112; *Quillin* v. *Commonwealth*, 105 Va. 874, 54 S. E. 333; *Forbes* v. *Commonwealth*, 90 Va. 550, 19 S. E. 164.

Another error alleged by the accused is the refusal of the trial court to permit him to state "the whole circumstances of his prior conviction."

We said in *Smith* v. *Commonwealth*, 161 Va. 1112, 172 S. E. 286, that the only purpose of admitting "evidence of a former conviction is to discredit a witness in the case then being tried. To remove that stain or to weaken its weight, the accused has a right to show the nature of the charge, the mere fact, if it was a fact, that he was convicted on conflicting evidence and that he had served his time, or had been paroled or pardoned by the Governor."

If the accused had been permitted to prove the circumstances of his former conviction, the result would have been a re-hearing of the evidence for the defense which he had produced, or had an opportunity to produce, at the former trial. The judgment of conviction reveals that there were extenuating circumstances as the extent of the punishment was the imposition of the minimum fine provided by statute, and a suspension of a thirty-day jail sentence. The rejected testimony did not add to or detract from the result apparent on the face of the judgment. We find no reversible error in this ruling.

Another error assigned is the failure of the trial court to give a written instruction limiting the force and effect of the proof of a former conviction.

The court gave the following oral instruction:

"Gentlement of the jury, the question of the former conviction has nothing in the world to do with the guilt or

innocence of the defendant on this charge. It affects his credibility and you are to determine about that."

This oral instruction was clear and unambiguous. There is nothing in the record to suggest that it was misunderstood by the jury. Under these circumstances, and in the absence of a request from the accused, there was no obligation upon the trial court to repeat the instruction in written form.

The accused objected to Commonwealth's instructions numbered 3 and 4. Both of these instructions, in substanially the same form, were given in *Albert* v. *Commonwealth*, 181 Va. 894, 27 S. E. (2d) 177. There is no necessity to re-state the reasons for their approval, as they were stated in some detail in that case.

*Affirmed.*

MILLER, J., dissenting.

A pedestrian was struck and killed by accused's automobile under such circumstances as to establish that the driver thereof was guilty of involuntary manslaughter. There were two occupants of the car, the accused and Ed Southers. Who was driving the vehicle when the fatal accident occurred was the chief factual issue to be determined. That being once ascertained, the only other question to decide was what punishment to impose.

The majority opinion concedes—in fact, states—that prejudicial testimony was admitted over objection of accused. It consisted of a long statement made by Ed Southers to the sheriff of the county in the absence of accused which definitely proved that he was the driver and not Southers. It also established that Coffey had, subsequent to the killing, proposed and entered into an understanding or conspiracy with Southers to suppress evidence or commit perjury so that it could not be determined which was at the wheel when the tragedy took place. If believed by the jury, it would not only have conclusively established the guilt of accused, but also the fact that he agreed to and did commit

perjury upon this trial when he testified that he was too drunk to know what happened.

After erroneously admitting the testimony, the court later undertook to strike it out. The Commonwealth's Attorney, being aware that the evidence was prejudicial to the accused, suggested that if the court had committed error, (which it had), that a mistrial be granted. That the court declined to do and remarked, "I don't think it is an error to be reversed on if nothing else happens in the case." The remark indicates that the trial judge did not consider that error sufficient to vitiate the trial if it was cured and none other committed.

That the effect of illegal testimony erroneously admitted may usually be cured by a clear instruction to the jury to disregard it is well recognized in Virginia by the decisions of *Taylor* v. *Commonwealth*, 122 Va. 886, 94 S. E. 795, and *Kroger Gro., etc., Co.* v. *Dunn*, 181 Va. 390, 25 S. E. (2d) 254, and other cases. Yet, in my opinion, this evidence and the circumstances attending its admission were so prejudicial as to render it highly doubtful whether its deterimental effect could be obliterated by any instructions that the court could give.

The jurors had heard it from one of the court's law enforcement officers. It was convincing of guilt and such as to arouse indignation against accused and demand an explanation. There was manifest probability that it would leave lasting and prejudicial impressions upon their minds even if stricken out in comprehensive and no uncertain terms. Speaking on that subject, Judge Kelly said in *Washington, etc., Railway* v. *Ward*, 119 Va. 334, 89 S. E. 140:

"There are cases in which the error of admitting improper testimony, or the effects of mere statements of counsel, cannot be adequately overcome by a subsequent direction to the jury to disregard the objectionable evidence or statements." (119 Va. p. 339).

That care should be used to fully remove the effect of

illegal testimony is made plain by a like statement in 5 Am. Jur. "Appeal and Error", sec. 1041, p. 596:

"It has been said, however, that care and caution are to be exercised in the delicate, difficult, and important matters of removing the prejudicial effect of evidence improperly admitted, and that the burden rests upon the party causing its admission, and no duty rests upon the other party in that connection after he has seasonably and properly reserved his exception to its admission."

See also, *Throckmorton* v. *Holt*, 180 U. S. 552, 21 S. Ct. 474, 45 L. Ed. 663.

But be that as it may, the court did not adequately strike out the evidence. In the majority opinion it is stated, "It is difficult to determine just what testimony the court meant to strike or withdraw from consideration of the jury. * * *

"Without further discussion, it is sufficient to say that the instruction to the jury to disregard the illegal testimony was not clear. It was not as direct, positive, or comprehensive as it should have been."

Its prejudicial effect and detrimental influence was therefore most probably left upon the minds of the jurors and influenced them in determining guilt and fixing punishment.

Though this evidence was not striken out in positive and comprehensive language, the majority opinion concludes that the court's error in that respect was not deterimental to the interests of the accused. It is stated:

"However, a careful study of the evidence convinces us that if we disregard all the the statements made by Southers to the sheriff and his deputies on Tuesday and all of the testimony of Southers himself, the jury would not have been justified in finding a different verdict."

It is treated as mere surplusage.

Though other legal evidence be conclusive of guilt, the trial court should nevertheless carefully guard against the admission of improper and prejudicial testimony. If it, however, be once admitted, to eradicate its detrimental effect, it should be stricken out in clear and adequate

language. To do less is to allow the Commonwealth to impair, if not destroy,. with illegal testimony that presumption of innocence to which the accused is entitled. It was said in the very recent case of *Carson* v. *Commonwealth*, *ante*, p. 398, at p. 412, 49 S. E. (2d) 704: "* * * This presumption applies at every stage of the trial until it is rebutted beyond a reasonable doubt by the evidence of the Commonwealth." I take it that statement means it must be rebutted by properly admissible evidence.

Nor do I think for other reasons are we entitled to say that "the jury would not have been justified in finding a different verdict."

Even though it be conceded that other properly admitted evidence conclusively established that accused was guilty of involuntary manslaughter, and this illegal evidence was mere surplusage, yet I think its prejudicial effect struck deeper than to just establish guilt. Its character was such as to incense the jury and bring about a more severe punishment than might otherwise have been inflicted.

In addition, this evidence might well have influenced the character of defense made by the accused. At the conclusion of the Commonwealth's case he was entitled to know just what evidence he was required to meet. At that stage of the trial, had the evidence that this court now deletes from the record been wholly excluded from the consideration of the jury, the Commonwealth's case would have definitely fallen short of conclusive proof of guilt. That was not done and the accused, being then faced with illegal evidence, was required to determine whether to testify himself and offer testimony of other witnesses or not. Had he not been confronted with that situation, he might well have declined to offer any evidence. That procedure would have kept from the jury all reference to his prior conviction of felony.

In sustaining this verdict and judgment, we do so upon a materially different case than that presented in the trial court and substantially different from what the accused was called upon to meet when the Commonwealth rested.

Here a major operation is performed upon the record and the objectionable evidence removed and guilt conclusively found upon what evidence remains. We even go further and approve the quantum of punishment imposed by the jury upon all of the evidence, good and bad, presented in the lower court. This, I think, establishes a dangerous practice and precedent to which I am unwilling to subscribe.

For the reasons above stated, I am of opinion that the conviction should be set aside and a new trial awarded.

STAPLES, J., concurs in this dissent.