454 S.E.2d 752

**George Rodney JENNINGS, Jr.**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0424–93–4.**

Court of Appeals of Virginia,
Alexandria.

March 14, 1995.

Barrow, J., filed dissenting opinion.

Paul A. Maslakowski, Leesburg (Campbell & Maslakowski, on brief), for appellant.

Margaret Ann B. Walker, Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on brief), for appellee.

Present: BARROW, COLEMAN and WILLIS, JJ.

COLEMAN, Judge.

George Rodney Jennings, Jr. was convicted in a jury trial of abduction with the intent to defile, Code § 18.2–48, and forcible sodomy, Code § 18.2–67.1. The victim, whom we will call Scott, was a fourteen-year-old boy that Jennings had befriended. The trial court sentenced Jennings, in accordance with the jury's verdicts, to two life terms in the penitentiary.

The sole issue on appeal is whether the trial court erred by admitting into evidence Jennings' out-of-court admissions that on four prior occasions, two in 1969 and two in 1985, he had befriended four other children and sodomized them. In each instance, Jennings had performed anal sexual intercourse upon his victims, the same sexual act that he committed against Scott.

The trial court ruled that Jennings' out-of-court admissions that he had committed acts of anal sodomy upon other children were relevant to prove that when Jennings shackled Scott to a bed, which was the act of abduction, Jennings' specific intent was to sodomize or defile the youngster.[1] Because the Commonwealth bore the burden of proving beyond a reasonable doubt that when Jennings abducted Scott, Jennings harbored the specific intent to defile his victim, the evidence of Jennings' admissions was highly probative to

---

1. The trial judge gave a limiting instruction, telling the jury that it could only consider the evidence of the prior acts of sodomy as to the issue of Jennings' intent on the abduction charge. Therefore, we do not address whether the evidence would have been relevant and admissible as to the sodomy charge in order to prove that the nature and character of the act committed against Scott was anal sodomy, rather than inanimate object penetration.

prove a material element of the abduction charge. Thus, the trial judge did not abuse his discretion by finding that the probative value of the evidence, although highly prejudicial, outweighed its incidental prejudice.

## I.

George Rodney Jennings met Scott's mother, who lived in Hagerstown, Maryland, after she responded to a "personal" ad that Jennings had run in a newspaper. Shortly after getting to know Scott's mother, Jennings suggested to her that because Scott was "in trouble" with the juvenile authorities, it might help if he, Jennings, would "[t]ake [Scott] every other weekend or . . . two . . . [l]ike taking him fishing, and like he was supposed to take him . . . skiing." She consented to the proposal.

In early January, 1991, Jennings was to take Scott on a weekend ski trip to a Pennsylvania ski resort. Before leaving, Jennings had Scott's mother sign a written consent form which authorized Jennings to discipline and to obtain medical treatment for Scott.

Shortly after they left for the weekend, Jennings informed Scott that the ski resort was not operating that weekend and that, instead, they would be going to his home in Loudoun County, Virginia. Soon after arriving in Loudoun County, Jennings came to Scott's room and began discussing with him the punishment that Scott was to receive for the "trouble he was in." Jennings presented Scott with the form that Scott's mother had signed, agreeing to Scott's being punished. Jennings then presented a form for Scott to sign, agreeing to be punished. At first, Scott refused to sign it. After being "told" by Jennings that unless he consented to be punished "that he [Jennings] was going to use something like a billy club," Scott signed the form, "consenting" to be punished. Jennings had Scott disrobe, lie on a cot on his stomach, and after securing Scott's hands to the cot with plastic "tie-downs," Jennings beat him with a belt and buckle so severely that

when Scott returned home, his entire buttocks were a "mass of solid bruises."

After beating Scott, Jennings told him that if he [Scott] went "down the road" to "one of those boys' reform schools," he would be punished there by those "[p]eople gang[ing] up on you ... sexually abus[ing] you." Jennings told Scott that "he had thought it over" and so Scott would know what to expect if he was confined, Jennings was going to "show him how it feels" to have a "penis [stuck] up his rectum." Scott testified that because he had his face "in the pillow," he did not "know for sure where [Jennings] was" or "for sure" what he "felt" "go up [his] butt" and remain there about "three minutes." Upon Scott's return home, his mother observed the injuries he had received from the beating, at which time Scott told her of the sexual assault. Jennings was then charged with sodomy and abduction.

At trial, Rosemary Lewis, who had been a mental health counsellor to Jennings in 1990, testified, over defense counsel's objection, that Jennings admitted to her that in the late 1960s, in separate instances, he "befriended" two teenage boys whom he "anally sodomized," one of whom he sodomized monthly. Lewis testified that Jennings also admitted that in the 1980s, after a period during which he was married, he "befriended" a seven-year-old boy and his sister, both of whom he periodically sodomized by anal sexual intercourse.

The trial court ruled Rosemary Lewis' evidence admissible for the limited purpose of proving that when Jennings abducted Scott by tying him to the cot, he did so for the purpose and with the intent of anally sodomizing Scott, rather than with the intent to punish him. The trial court gave a limiting instruction which told the jury that they were to consider the evidence of acts of anal sodomy upon other children solely for the purpose of determining Jennings' intent at the time he bound and abducted Scott.

## II.

Evidence that proves or tends to prove that the accused committed a crime separate from the one charged is

prejudicial by its very nature, and should generally be excluded from trial, *Kirkpatrick v. Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970), except when the legitimate probative value of that evidence outweighs its incidental prejudice. *Spencer v. Commonwealth*, 240 Va. 78, 90, 393 S.E.2d 609, 617, *cert. denied*, 498 U.S. 908, 111 S.Ct. 281, 112 L.Ed.2d 235 (1990); *Lewis v. Commonwealth*, 225 Va. 497, 501–02, 303 S.E.2d 890, 893 (1983).

The exceptions to the general rule are numerous, and evidence of other crimes or other bad acts is admissible when relevant to prove a material fact or element of the offense. *Kirkpatrick*, 211 Va. at 272, 176 S.E.2d at 805. For example, "[s]uch evidence is permissible in cases where the motive, intent or knowledge of the accused is involved." *Id.* Similarly, evidence of other crimes may be admitted to prove knowledge, or to refute a claim of mistake, or to prove identity where some aspect of the incident or the method by which the other crime is committed is so distinctive or "idiosyncratic" that the fact finder reasonably could infer that the same person committed both crimes. *Spencer*, 240 Va. at 89–90, 393 S.E.2d at 616–17. The rule governing the admissibility of other crimes evidence is the rule of relevance. When proof that the accused committed other crimes or bad acts has a rational basis from which the fact finder reasonably can infer the existence of a material fact or element of the charged crime, the evidence is relevant.

However, proof that an accused "at other times" committed acts or crimes "of the same nature as the one charged . . . is incompetent and inadmissible for the purpose of showing" that the accused has a propensity to commit crimes or a particular crime and, therefore, to conclude that the accused probably committed the charged crime. *Kirkpatrick*, 211 Va. at 272, 176 S.E.2d at 805. Merely proving that a person has a propensity to commit acts or crimes similar to the charged offense does not, without more, logically justify an inference that the person committed that offense. Thus, it does not logically follow that because a person previously sodomized

one or more children, subsequent contact with a child is for the purpose of sodomizing the child. The fallacy in this form of nondeductive reasoning is termed "hasty generalization." David A. Conway & Ronald Munson, *The Elements of Reasoning*, 138 (1990). Thus, it would not be permissible to infer from the prior acts of sodomy and the fact that Jennings had taken Scott with his mother's permission that Jennings intended to sodomize Scott. Such an inference is too tenuous and has no propensity to prove a fact in issue.

Where the inference to be drawn is not so general as simply to infer guilt from the prior commission of a similar crime, however, a more narrow and specific inference may reasonably follow and be plausible from a given set of circumstances. For instance, where the Commonwealth is required to prove that an accused knows the nature and character of an illegal controlled substance, the Commonwealth may be permitted to prove the state of the accused's knowledge by showing that, on another occasion, the accused knowingly possessed the same type substance. *See Rider v. Commonwealth*, 8 Va.App. 595, 383 S.E.2d 25 (1989).

Another example of prior conduct that is relevant and admissible because it tends to prove directly a specific fact or element, rather than merely show a propensity or inclination toward criminal behavior, is when "the evidence of other crimes so resembles the pattern of the offense charged as to raise the probability of a common perpetrator." *Spencer*, 240 Va. at 89, 393 S.E.2d at 616. The other crimes evidence is not relevant because the fact finder cannot infer that the accused probably committed the charged crime simply because he committed a similar crime before; it would be relevant if some aspect of two separate events was so distinctive or "idiosyncratic" that it would be reasonable to infer that the person who committed the first act is the same person who committed the second act. *Id.* Thus, as the *Kirkpatrick* case reiterates, evidence of other prior acts, conduct, or behavior may be relevant and admissible to prove numerous material facts and elements of a case, even though the evidence may also prove

other criminal acts. *Kirkpatrick*, 211 Va. at 272, 176 S.E.2d at 805.

### III.

■■■ Jennings was charged with abducting Scott with the intent to defile him. Intent is the purpose formed in a person's mind that may, and often must, be inferred from the facts and circumstances in a particular case. *Ridley v. Commonwealth*, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). An alleged offender's intent or state of mind may be shown by the person's conduct and statements. *Long v. Commonwealth*, 8 Va.App. 194, 198, 379 S.E.2d 473, 476 (1989). Where intent is an element of an offense, it must be proven as a matter of fact, and "[s]urmise and speculation as to the existence of the intent are not sufficient." *Dixon v. Commonwealth*, 197 Va. 380, 382, 89 S.E.2d 344, 345 (1955). In order to prove abduction with the intent to defile in violation of Code § 18.2–48, the Commonwealth had to prove beyond a reasonable doubt that when Jennings bound Scott to the cot, he did so specifically intending to sexually molest him. *Simms v. Commonwealth*, 2 Va.App. 614, 617, 346 S.E.2d 734, 735 (1986).

Substantial circumstantial evidence was presented against Jennings which tended to prove that he intended to sodomize Scott when he shackled him to the cot and beat him. In fact, Jennings told Scott he was going "to show him how it feels" to have a "penis [stuck] up his rectum." Scott was unable to testify, however, that he actually knew or saw that Jennings' penis had penetrated him. Scott had placed a pillow over his head, and he did not observe what Jennings did immediately before or after Scott felt his anus being penetrated. He had not seen Jennings in any state of undress. Scott felt something "go up [his] butt" and "remain there for about three minutes." Although Jennings denied the incident altogether, according to Scott, Jennings' professed purpose in shackling Scott to the cot was to punish him.

■■■ "Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in

issue, is relevant, and if otherwise admissible, should be admitted." *Harrell v. Woodson*, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987). Evidence that is relevant and admissible for one purpose, but not for another, even though it may have some incidental prejudicial aspect to it, should be admitted together with a limiting or cautionary instruction to the jury. *See Coffey v. Commonwealth*, 188 Va. 629, 640–41, 51 S.E.2d 215, 220 (1949).

While the jury reasonably could have inferred without the other crimes evidence that Jennings intended to and did anally sodomize Scott, the evidence also showed that Jennings punished Scott by beating him with a belt. Thus, evidence that Jennings had on other occasions committed anal sodomy upon other children was highly relevant to prove that Jennings intended to sodomize Scott, rather than to punish him.

Once the evidence established that Jennings committed a specific act upon Scott, the prior acts of sodomy were relevant to prove the intent behind Jennings' acts; proof of the prior acts of sodomy was not introduced merely to prove guilt based on Jennings' propensity to commit that crime. Any fact or circumstance that had a reasonable tendency to prove, elucidate, or explain Jennings' intent was admissible, provided its probative value outweighed any prejudicial effect. The proof was admissible for the narrow and direct purpose of allowing the fact finder to determine Jennings' intent based on what he admitted having done under similar circumstances on prior occasions.

■ "Although there was undoubtedly a prejudicial effect upon the defendant [by introducing evidence that he admitted to four previous acts of anal sodomy upon children], we cannot say that the trial court abused its discretion in ruling that the prejudicial effect was outweighed by the probative value of that evidence." *Spencer*, 240 Va. at 91, 393 S.E.2d at 617. The trial court instructed the jury that the evidence of Jennings' admission of prior acts of sodomy could not be considered in determining his guilt, but could only be considered in determining what Jennings intended to do to Scott at the time

Jennings allegedly bound Scott to the cot. The jury is presumed to have followed a trial court's limiting or cautionary instruction. *LeVasseur v. Commonwealth,* 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), *cert. denied,* 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984). The limiting instruction was given to ensure that the jury would not misuse the evidence to conclude that because Jennings committed similar bad acts against other children, he was guilty of the charged crime.

We cannot say that the trial court abused its discretion by admitting the evidence of Rosemary Lewis. Accordingly, we affirm the judgment of the trial court.

*Affirmed.*

BARROW, Judge, dissenting.

Admitting evidence of the defendant's prior criminal misconduct into evidence conflicts with the decisions of this court in *Jones v. Commonwealth,* 18 Va.App. 329, 443 S.E.2d 820 (1994), and *Wilson v. Commonwealth,* 16 Va.App. 213, 429 S.E.2d 229, *aff'd en banc,* 17 Va.App. 248, 436 S.E.2d 193 (1993). Consequently, I dissent from the majority's decision.

While in counseling, the defendant admitted to his counselor that, in 1969 and 1985, he had committed acts of sodomy on four minors. From this evidence, the trial court allowed the jury to infer that when Jennings abducted the teenage boy in this case, he did so with an intent to sodomize him.

Even though evidence of a prior crime suggests to a jury that an accused has a propensity to commit such a crime and is more likely to have committed a later similar crime, the law of Virginia generally prohibits the introduction of such evidence. *Jones v. Commonwealth,* 18 Va.App. at 331–32, 443 S.E.2d at 821. Such evidence is excluded, not because the inference is irrational, but because of the risk that the jury might give the evidence more weight than it should receive, unduly prejudicing the defendant.

In *Jones* and *Wilson,* we held that prior sales of cocaine were inadmissible to prove that cocaine later possessed by the accused was possessed with the intent to sell it. In *Jones,* we

noted that to be admissible, evidence of a prior similar crime "must be closely related in time and nature to the charged offense so that the fact finder could reasonably infer that the later act follows from or was related to the former." *Jones*, 18 Va.App. at 332, 443 S.E.2d at 821.

What we said in *Jones* and *Wilson* applies equally to this case. If a prior, unrelated sale of cocaine is inadmissible to prove an accused's intent regarding a later possession of cocaine, a prior, unrelated act of sodomy should be inadmissible to prove an accused's intent regarding a later abduction. Had the defendant been charged with abducting an adult female, an act of rape committed twenty years before would not have been admissible to prove that the accused abducted the victim with an intent to rape her. *See Williams v. Commonwealth*, 203 Va. 837, 127 S.E.2d 423 (1962) (evidence of prior assault by defendant against victim inadmissible to prove deliberation or premeditation in the commission of a murder months after the assault prosecution); *Day v. Commonwealth*, 196 Va. 907, 86 S.E.2d 23 (1955) (evidence that defendant chased a woman shortly before he was alleged to have raped another woman was inadmissible to establish intent to molest women and was of "doubtful" probative value as to identity); *Curtis v. Commonwealth*, 3 Va.App. 636, 352 S.E.2d 536 (1987) (evidence of prior rapes which were "so unusual and distinctive as to act as a signature" was admissible to prove identity of defendant as perpetrator in a rape case with "overwhelming similarities").

The only factor distinguishing this case from *Jones* and *Wilson*, is the nature of the crime. Perhaps, sodomy is a crime which is so likely to be repeated that little or no risk of undue prejudice arises from admitting evidence of a prior act of sodomy to prove that an accused later committed such an act. If social science supports such a conclusion, the legislature is better able than we to adopt such a rule of evidence.

For these reasons, I would hold that the evidence of the defendant's prior acts of sodomy was inadmissible. Because this evidence may have affected the verdict, I would reverse

the defendant's convictions and remand the matter for a retrial.