COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Coleman and Senior Judge Cole
Argued at Richmond, Virginia


DWAYNE EDWARD GUILL
                                      MEMORANDUM OPINION[*] BY
v.          Record No. 0592-96-2    CHIEF JUDGE NORMAN K. MOON
                                           APRIL 22, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHARLOTTE COUNTY
                    William L. Wellons, Judge

            Andrea C. Long (Edward A. Mann, on brief),
            for appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.


     Dwayne Edward Guill appeals his conviction for breaking and

entering with the intent to commit rape in violation of Code

§ 18.2-90.  Guill argues that the trial court erred in (1) not

granting his motion to exclude evidence regarding a 1985

conviction for breaking and entering a dwelling house in the

nighttime with the intent to commit rape, and (2) in finding the

evidence was sufficient to sustain a conviction for breaking and

entering with the intent to commit rape.  Holding that the 1985

conviction was admissible to prove Guill's intent in this case

and that the evidence excluded any reasonable hypothesis of

innocence, we affirm.

     On May 22, 1995, Danny Crews and his wife were asleep in

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

their home.  Their two daughters, ages five and seven, were asleep in a nearby bedroom.  At approximately 2:00 a.m., Crews was awakened by the sound of his daughters talking.  Mr. Crews went to investigate and discovered Guill backing out of his daughters' room.  Crews asked Guill "what in the hell are you doing in my house?"  Guill reached for his back pocket and said "I'll cut your f---ing head off."  The men faced off for a few seconds and then Guill turned and fled out the back door of the house, breaking both the chain lock and the storm door lock as he left.    Crews discovered that although there were open windows in the living room and master bedroom, Guill had entered the house by taking a twelve-foot stepladder from the basement and climbing through a bathroom window.  Just outside the bathroom door was a desk on which Mrs. Crews' open purse sat, containing her keys and $200 in cash.  The area was illuminated so that the purse and cash would have been readily visible.  Crews also discovered signs that someone had attempted to steal gasoline from his two trucks.  The gas tank cap was missing from one of the trucks, and the gas line was pulled loose from the gas tank of the other truck.  A plastic water bucket had been removed from Crews' well house and contained approximately a quarter inch of gasoline.  Crews' fifty foot water hose had also been moved to where the two trucks were parked.  The keys to one truck, normally kept inside the truck, were also missing.

Crews also discovered Guill's motorcycle helmet left near a security light attached to Crews' home.  The security light,

located near where the trucks were parked, illuminated a portion of the exterior and a portion of the girls' bedroom. The windows of the girls' bedroom were covered by curtains which were thin enough that the interior of the room was visible through the curtains.

Guill was apprehended three weeks later and initially denied any involvement with the break-in. Eventually, Guill told police that he was at the Crews' home because his motorcycle had run out of gas. Guill explained that he entered the Crews' home because he was looking for keys to the trucks' gas tanks. Guill admitted using a ladder he took from the basement to enter the house through a bathroom window. Guill testified that once he was inside, he started looking for keys, but heard the girls "wake up," so he went in to tell them to be quiet. Guill explained that one of the girls started crying, so "I got up and went out of the room and as I did I met the man [Crews]."

During Guill's trial for breaking and entering with intent to commit murder, rape or robbery, the Commonwealth introduced evidence, over Guill's objection, that he had committed a similar act of breaking and entering with intent to commit rape in 1985. The Commonwealth argued the evidence was relevant because the prior crime and the crime charged were significantly similar and served to establish Guill's modus operandi.

### Other Bad Acts Evidence

Jane Card testified that in 1985, when she was sixteen years old, she and her cousin were asleep in an upstairs bedroom when

she was attacked by Guill. Card explained that Guill had broken into her home, entered her and her cousin's room, got into their bed with his shirt off and began kissing and fondling her and then attempted to rape her. Card and her cousin screamed and fought, and Guill threatened to kill them if they did not keep quiet.

Here, the crime of which Guill was convicted required that the Commonwealth prove beyond a reasonable doubt that Guill entered the Crews' home with the intent to commit rape. Guill disavowed such intent and testified that he only entered the Crews' home with the intent to find keys to the gas tanks of the Crews' trucks. Because Guill's intent was in question, "[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted. [However,] [e]vidence of other independent acts of an accused is inadmissible if relevant only to show a probability that the accused committed the crime for which he is on trial because he is a person of bad or criminal character." Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985). Such evidence is admissible, however, when it is "relevant to an issue or element in the present case." Id. "[I]f such evidence tends to prove any of the relevant facts of the offense charged and is otherwise admissible, it will not be excluded merely because it also shows him to be guilty of another crime." Williams v. Commonwealth, 203 Va. 837, 841, 127 S.E.2d 423, 426

(1962).

Accordingly, we have held that evidence of prior bad acts may be properly admitted

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a modus operandi; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

Lockhart v. Commonwealth, 18 Va. App. 254, 259, 443 S.E.2d 428, 429 (1994). "With respect to these exceptions, the test is whether `the legitimate probative value outweighs the incidental prejudice to the accused.'" Hawks v. Commonwealth, 228 Va. 244, 247, 321 S.E.2d 650, 652 (1984) (quoting Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 897 (1985)).

Here, the actions for which Guill was previously convicted are significantly similar to the facts in this case. As in his prior criminal activity, Guill also broke into a home in the nighttime and entered the room of two young girls. Although the record does not contain evidence of Guill having disrobed or entered the girls' bed, Guill's prior actions are nevertheless sufficiently similar to be probative of Guill's intent. Accordingly, evidence of Guill's prior bad acts was admissible for the narrow purpose of proving, elucidating, or explaining

Guill's intent.  Jennings v. Commonwealth, 20 Va. App. 9, 18, 454 S.E.2d 752, 756, aff'd en banc, 21 Va. App. 388, 464 S.E.2d 179 (1995).

In Jennings, the defendant was charged with abducting a minor with intent to defile him.  The defendant argued that he had gained permission from the child's parent to discipline the child and that he had tied the boy to a cot, beat him, and sodomized him, with the intent of punishing him, not with the intent to defile him.  We held that although there was undoubtedly a prejudicial effect upon the defendant by introducing evidence that he admitted to four previous acts of anal sodomy upon children, we could not say that the trial court had abused its discretion in determining that the prejudicial effect was outweighed by the probative value of the prior bad acts regarding the defendant's intent.  Id.

Like the circumstances in Jennings, the evidence of Guill's prior breaking and entering with intent to rape conviction is both prejudicial and probative.  And, although highly prejudicial, here again, we cannot say that the trial court abused its discretion in determining that the legitimate probative value of the evidence of Guill's prior conviction as it pertained to his intent, outweighed the incidental prejudice of that evidence.

### Sufficiency of the Evidence

Guill asserts that the Commonwealth failed to prove that he intended to commit rape when he broke and entered the Crews'

home.

In order to convict Guill, the Commonwealth bore the burden of proving that at the time of the breaking and entering, Guill had the specific intent to commit rape. Dixon v. Commonwealth, 197 Va. 380, 89 S.E.2d 344 (1955). It is the duty of the trier of fact to weigh the evidence presented by the Commonwealth and ultimately, to determine whether Guill acted with the requisite criminal intent. See Griggs v. Commonwealth, 220 Va. 46, 51, 255 S.E.2d 475, 478 (1979). In making such a determination the court may, and often must, rely on circumstantial evidence. Jennings v. Commonwealth, 20 Va. App. 9, 17, 454 S.E.2d 752, 756, aff'd en banc, 21 Va. App. 388, 464 S.E.2d 179 (1995).

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Here, Guill's explanation for his breaking and entering conflicts with the facts. The record revealed that the two trucks Guill attempted to siphon gas from were parked near a security light which also shone into the girls' bedroom and from which they could be seen. Despite there being open windows in the master bedroom and living room, Guill took a stepladder and broke and entered through a bathroom window. There was $200 in cash and a set of keys in an open purse which was in plain sight on a desk immediately adjacent to the doorway of the bathroom through which Guill entered the Crews' home. Guill took neither the money nor

keys and did not disturb the purse or any of its possessions, despite his assertion that he was specifically in search of keys.

Guill's entrance into the girls' bedroom also belied his statement that he was just searching for keys. Guill allegedly entered the girls' room to instruct them to be quiet. However, such action, i.e., revealing his presence to children in the home, is inconsistent with a desire to simply find keys and supports a reasonable inference that Guill's intent was something other than retrieving keys. Further, despite his assertion that he merely entered the room to quiet the girls, Guill told one of the investigating officers that after one of the girls started to cry, "I got up and went out of the room and as I did I met the man." (Emphasis added). Guill's statement evidences the fact that he did something more than simply enter the room and instruct the girls to be quiet. Finally, the Commonwealth admitted evidence of Guill's former breaking and entering with intent to commit the rape of two children which was properly weighed by the court in determining Guill's intent in entering the girls' bedroom in this case.

The evidence was sufficient to support the trial court's finding that Guill broke and entered the Crews' home with the intent to commit rape. Guill's explanation was inconsistent with the evidence presented. The trial court was under no obligation to believe Guill nor to give weight to his testimony. It is for the trier of fact to ascertain a witness' credibility and it is within the fact finder's discretion to accept or reject any of

the testimony offered.  <u>Bridgeman v. Commonwealth</u>, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).  We affirm.

<u>Affirmed</u>.