JUSTICE COMPTON,
with whom CHIEF JUSTICE CARRICO joins, dissenting.
The main issue in this criminal appeal is whether the trial court erroneously admitted so-called “other crimes” evidence on the question of the accused’s specific intent to commit the offense charged.
Dwayne Edward Guill was tried by the Circuit Court of Charlotte County, sitting without a jury, upon an indictment for unlawfully and feloniously breaking and entering a dwelling house in the nighttime with the intent to commit murder, rape, or robbery in violation of Code § 18.2-90. Defendant was found guilty as charged and was sentenced to confinement in the penitentiary for 20 years, with execution of 5 years suspended.
Upon review, a panel of the Court of Appeals unanimously affirmed the conviction in an unpublished opinion. The Court of Appeals concluded that the trial court correctly admitted evidence regarding defendant’s 1985 conviction for breaking and entering a dwelling house in the nighttime with the intent to commit rape, and correctly found the evidence sufficient to sustain the instant conviction.
The Court awarded defendant this appeal. According to settled principles of appellate review, I shall summarize the facts in the light most favorable to the Commonwealth.
On May 22, 1995, Danny Crews, his wife, and their two daughters, five and seven years of age, resided in the Drakes Branch area of Charlotte County. On that date, near 2:00 a.m., the parents awoke in their ground level bedroom to the sound of the daughters talking in a separate bedroom, also at ground level. As the father approached the children’s room, the defendant “was backing out of that bed *143 room,” which was illuminated by a security light mounted on a pole outside the home.
The father said to defendant, a stranger, “[M]an, what in the hell are you doing in my house.” According to the father, defendant “reached for his back pocket with his right hand” and threatened to cut off the father’s head. The two men stood facing each other “for a second or two.” Then defendant “fled out of the back door,” breaking two door locks as he ran. Defendant left the scene on a motorcycle parked nearby.
Defendant, age 34, was arrested three weeks later. “At first he denied any involvement in the burglary or break-in and later on he did admit that he went in the house,” according to the investigating officer.
In a statement to the police, defendant, who did not testify at trial, claimed that while riding the motorcycle, he “ran out of gas and that he was in the house looking for keys to the gas tanks” of trucks parked in the yard of the Crews’ home. Defendant stated he had found “a little” gas but was searching for more in a locked tank “on the back of a pickup truck.”
Defendant further stated he gained access to the home by using a ladder and crawling through a bathroom window after cutting the screen. Once inside, he said, “I was looking around for the keys and heard the kid wake up.” Defendant stated that while he was in the children’s room, “I told her to be quiet . . . And then she started crying.” Asked what happened next, defendant stated: “I got up and went out of the room and as I did I met the man.”
The investigation revealed that, at the time of the incident, ground floor windows were open that would have allowed defendant to enter the home without use of a ladder. These windows, however, were in a portion of the home that was illuminated by the exterior light, while the area near the bathroom window was dark.
In addition, a desk and chair in an illuminated hall area were in the path of one proceeding from the bathroom to the girls’ room. Mrs. Crews’ purse containing keys was in the chair, and $200 in cash “was sticking up out of [the] pocketbook”; it was not disturbed during the incident. Also, prior to the incident, the door to the girls’ room “was halfway open” and a light burning in the kitchen shone into their room.
At trial, the prosecution presented, over defendant’s objection, the testimony of a woman who was the victim of a breaking and entering with intent to commit rape perpetrated by defendant in June of 1985. *144 That crime occurred during the nighttime in a Chase City residence when the witness, age 16 at the time, occupied an upstairs bedroom with her 15-year-old female cousin.
The defendant, a stranger to the girls, unlawfully entered the dwelling through a rear door, proceeded past a downstairs bedroom occupied by an adult, entered the girls’ bedroom wearing only “shorts,” got into their bed, kissed one of the girls, attempted to rape the witness, and left the home when the girls fought him and screamed for help. According to the witness, defendant “told my cousin that if I don’t be quiet he was going to kill me.” Subsequently, defendant was convicted in Mecklenburg County of that offense.
In this appeal, defendant contends the Court of Appeals erred in affirming the action of the trial court in admitting the evidence of the 1985 crime. I disagree.
Generally, proof showing an accused committed other crimes at other times is incompetent and inadmissible for the purpose of establishing commission of the particular crime charged. Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380 (1988), cert. denied, 490 U.S. 1009 (1989); Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). Such evidence is admissible, however, when “it tends to prove any relevant element of the offense charged,” such as when the accused’s intent is at issue. Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805. Accord Jennings v. Commonwealth, 20 Va. App. 9, 15, 454 S.E.2d 752, 755 (1995). Nevertheless, evidence of other crimes is admissible only when “the legitimate probative value outweighs the incidental prejudice to the accused.” Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983).
In the present case, under the indictment, the Commonwealth had the burden to prove beyond a reasonable doubt that defendant broke and entered the Crews’ residence in the nighttime with the specific intent to commit rape. See Code § 18.2-90; Snyder v. Commonwealth, 220 Va. 792, 798, 263 S.E.2d 55, 59 (1980). “Intent is the purpose formed in a person’s mind which may, and often must, be inferred from the facts and circumstances in a particular case.” Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). This state of mind may be shown by the offender’s acts and conduct. Id.
Here, there is no dispute defendant broke and entered the Crews’ dwelling in the nighttime. The only contested element of the offense *145 charged is whether defendant’s intent, in entering the home, was to rape either or both of the girls, as opposed to an intent to procure fuel for his motorcycle, as he claimed. The question then becomes whether evidence of the 1985 crime was relevant and tended to prove defendant’s specific intent to commit the crime.
Admissibility of “other crimes” evidence does not necessarily turn on the proximity of the prior acts to the crime charged. Indeed, the Court of Appeals has approved the use of such evidence when the prior conduct was ten and twenty years in the past. Jennings, 20 Va. App. at 14, 454 S.E.2d at 754.
Also, this Court has rejected the notion that when evidence of other crimes is offered to prove modus operandi, an exact resemblance to the crime on trial as to constitute a “signature” is necessary to qualify such evidence for admission. Rather, the Court has said it is sufficient if the evidence of other crimes bears “a singular strong resemblance to the pattern of the offense charged.” Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 616, cert. denied, 498 U.S. 908 (1990) (internal quotation marks omitted). The Court has explained that the test for admissibility is met when the prior crime is sufficiently idiosyncratic to permit an inference of a pattern for proof purposes. Id. The present case is not a modus operandi case in which an effort is made to establish the identity of the accused by showing the probability of a common perpetrator. However, I perceive no reason why the same test should not apply when, as here, the perpetrator’s identity is known and his intent is in question.
Here, the evidence of the 1985 crime bears a singular strong resemblance to the pattern of the offense charged and is sufficiently distinctive to permit an inference of a pattern of behavior. For example, in 1985, as here, defendant broke and entered a residence. In 1985, as here, the crime was committed in the nighttime. In 1985, as here, the defendant proceeded past an adult’s bedroom en route to a bedroom occupied by young girls. In 1985, the girls were young, 15 and 16 years of age. Here, the girls also were young, five and seven years of age.
In 1985, defendant tried to rape one of the girls. Here, the defendant did something in the bedroom, while he was there an undetermined period, that required him to “get up” before he left the room. A reasonable inference from that proven fact is that defendant sat on the girls’ bed in order to molest either or both of them. Although that proven fact may give rise to other inferences, such as, that defendant *146 intended to commit an assault and battery, the Court must accept on appeal the inference that is most favorable to the Commonwealth.
In 1985, the girls screamed and defendant threatened to kill one of them. Here, the girls cried and defendant threatened to kill the father.
Therefore, I would hold that proof of the 1985 crime was relevant because it tended to establish the defendant’s specific intent. Further, the legitimate probative value of the evidence outweighs the incidental prejudice to the defendant. “The responsibility for balancing these competing considerations is largely within the sound discretion of the trial judge. . . . And a trial court’s discretionary ruling will not be disturbed on appeal absent a clear abuse of discretion.” Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). Hence, the evidence was admissible, and the Court of Appeals did not err in affirming the trial court’s ruling on that issue.
My analysis of the first issue effectively disposes of the second. Defendant contends the evidence was insufficient to convict him of the crime charged. I disagree.
The trial court was entitled to infer that defendant, given his propensity to commit sexual crimes involving young girls, entered the home and remained in the girls’ bedroom intending, not to look for keys, but to rape either or both of them. Defendant’s activity was wholly inconsistent with a quest for fuel.
Defendant observed the girls sleeping as he was standing in the yard near their illuminated room. At that point in time, he already had obtained “a little” gasoline, sufficient to enable him to drive a distance from the scene after he fled the home, according to the evidence. Nevertheless, according to his story, he risked entering the home to search for still more fuel. One wonders why he did not just drive away using the gas he had found.
After breaking and entering the home through a dark area to avoid detection, he moved through a lighted hall toward the girls’ room. He passed an open purse containing both keys and money, with which he readily could have obtained the gas he allegedly sought. He remained in the girls’ room for an indeterminate period of time and “got up” in order to leave. As I have said, reasonably to be inferred from all the circumstances is the conclusion that defendant entered the home with the specific intent to commit rape.
Consequently, I would hold that the Court of Appeals did not err, and I would affirm the judgment appealed from.