COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judge Elder and Senior Judge Willis
Argued at Richmond, Virginia


LATASHA ALON GARDNER, S/K/A
   LATHASHA A. GARDNER
                                          MEMORANDUM OPINION[*] BY
v.       Record No. 0789-07-2               JUDGE LARRY G. ELDER
                                               JULY 1, 2008
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                        William R. Shelton, Judge Designate

            Lacey R. Parker, Assistant Public Defender (Office of the Public
            Defender, on brief), for appellant.

            Joshua M. Didlake, Assistant Attorney General (Robert F.
            McDonnell, Attorney General; Office of the Attorney General, on
            brief), for appellee.


       Latasha Alon Gardner (appellant) appeals from her jury trial conviction for

embezzlement in violation of Code § 18.2-111.  On appeal, she contends the circumstantial

evidence was insufficient to support her conviction because it failed to prove the money

allegedly embezzled was actually received by the roofing company for which she was working

as a temporary employee and failed to exclude the possibility that the money, if received, was

not taken by someone else.  We hold the evidence was sufficient to support her conviction, and

we affirm.

       When considering the sufficiency of the evidence on appeal to support a criminal

conviction, this Court views the evidence in the light most favorable to the Commonwealth.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  The fact

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

finder is not required to believe all aspects of a witness's testimony; it may accept some parts as believable and reject other parts as implausible. Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993). The jury's verdict will not be set aside unless it appears that it is plainly wrong or without supporting evidence. Code § 8.01-680; Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

A conviction for embezzlement under Code § 18.2-111 may be sustained on proof that the accused "wrongfully and fraudulently use[d], dispose[d] of, conceal[ed] or embezzle[d] any money . . . [s]he shall have received . . . for [her] employer . . . or by virtue of [her] . . . employment." Code § 18.2-111; see Waymack v. Commonwealth, 4 Va. App. 547, 549, 358 S.E.2d 765, 766 (1987). Proof of the "'[u]nauthorized and wrongful exercise of dominion and control over another's personal property, to the exclusion of or inconsistent with [the] rights of the owner," is sufficient to prove embezzlement. Evans v. Commonwealth, 226 Va. 292, 297, 308 S.E.2d 126, 129 (1983) (quoting Black's Law Dictionary 300 (5th ed. 1979)). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). Intent may, and usually must, be proved by circumstantial evidence, Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), such as a person's conduct and statements, Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989). Proof of deceitful conduct, for example, may establish the requisite fraudulent intent. See Smith v. Commonwealth, 222 Va. 646, 652, 283 S.E.2d 209, 212 (1981) (noting the defendant's prior inconsistent statements about his contact with the missing property established his untruthfulness and provided evidence of the requisite criminal intent, which, in turn, was relevant to establish he was the criminal agent); Waymack v. Commonwealth, 4 Va. App. 547, 550, 358 S.E.2d 765, 766 (1987) (in reversing the

defendant's conviction, noting the absence of evidence that she attempted to conceal her allegedly criminal activity).

Here, the evidence, viewed in the light most favorable to the Commonwealth, supported the jury's finding that appellant "wrongfully and fraudulently use[d], dispose[d] of, conceal[ed] or embezzle[d] any money . . . [s]he shall have received . . . for [her] employer . . . or by virtue of [her] . . . employment." Code § 18.2-111. Immediately before Paula Spradlin—the roofing company's "meticulous" officer manager of more than thirty years—departed for her vacation and left appellant in charge of the company's administrative office, Spradlin reconciled the cash and cash tickets in the company safe's cash drawer and counted the money in the petty cash box, which was stored on a shelf in the safe. The safe was located in a fireproof "vault" room that was accessible only through the main administrative office Spradlin normally occupied and which appellant occupied in her absence. The building was designed such that customers entering the lobby to conduct business could see into the main administrative office, but the administrative office was separated from the lobby by a counter and window, and all transactions conducted with customers were "handled through" that window. The door to the vault room was kept unlocked during the day only after the person staffing the administrative office had arrived in the morning.

Before Spradlin departed for her vacation on August 12, 2005, she gave appellant five hours of training, in which she explained that tickets for cash sales made at the counter, along with the cash paid for those sales, were to be placed in the safe's cash drawer. Spradlin also explained that tickets for charge customers were to be placed in the charge folder at Spradlin's desk, which appellant believed Spradlin checked once a month. Upon Spradlin's return, she found tickets for two of five cash sales that had occurred in her absence had been misfiled in the

charge ticket folder she kept at her desk. Upon further investigation, Spradlin determined the cash drawer was short $623.82 and the petty cash box was short $305.18.

Appellant claimed to have handled only two cash transactions, including one she completed with Company President Mark Bridenhagen's assistance, and to have filled out the cash tickets for only those two cash transactions in Spradlin's absence. Appellant said those two transactions were the ones for which Spradlin had found the tickets misfiled with the charge tickets in the folder at her desk. Appellant claimed she placed those two cash tickets in the folder because she did not know where else to put them and that she had put the cash received for those transactions in the cash drawer in the safe. When Spradlin said she and appellant should reunite the misfiled cash tickets with the money in the cash drawer,[1] appellant "just sat there" at her desk and made no move to accompany Spradlin to the safe. When Spradlin discovered the discrepancy in both the cash drawer and the petty cash box and was "frantically running around the office," appellant said, "I did what I was told to do." Appellant then just "sat there playing a game on her cell phone," "never got up out of her seat," and "never looked at [Spradlin]." Although appellant worked for the company for an additional three days after Spradlin discovered the money missing, appellant never asked Spradlin if "[she] [found] the money" or if "everything turn[ed] out all right."

Despite appellant's claims that she completed tickets for only two cash transactions and put those two tickets in the charge folder because she did not know what else to do with them, both the two misfiled cash tickets, as well as three cash tickets properly placed in the safe's cash drawer, bore the same initials, l.g., which were appellant's initials. The evidence supported a finding that the handwritten product and pricing information on all five tickets, and the accompanying "l.g." initials, were in appellant's handwriting. Further, in contrast to appellant's

---

[1] This occurred before Spradlin had determined the drawer and cash box were "short."

- 4 -

testimony that she put both of the cash tickets she admitted completing—including the one Bridenhagen assisted her with—in the charge folder because she did not know what to do with them, Bridenhagen testified that, as to the transaction in which he participated, he himself put both the ticket and the cash in the cash drawer.

Finally, the Commonwealth offered testimony from Spradlin, Bridenhagen and the remaining employees who knew the combination to the safe or were routinely present in the company's offices that no one other than appellant could have taken the money. The evidence established that the safe and vault were locked during non-business hours and that the safe was kept "closed" even during business hours so it would not be obvious to a casual observer that the safe could be accessed without the combination. Further, Spradlin, Bridenhagen and the remaining employees who knew the combination to the safe or were present in the company's business offices during that period of time testified that they did not take the money missing from the safe. Those same employees testified that they saw no unauthorized people present in the building, no sign that anyone had broken into the vault or safe, and no sign that anything, other than the money later discovered missing, had been taken. Appellant, whose desk was closest to the safe and who completed the paperwork for all five cash transactions, told the detective who interviewed her following her arrest that other than the company's office employees, no one was left alone in the company's office while she was working there that week and that she was with all guests "the whole time." The map of the offices introduced at trial showed that a customer transacting business at the sales window would have to pass through three doors, in addition to the door to the vault room, in order to gain access to the safe.

The only reasonable hypothesis flowing from this testimony, viewed in the light most favorable to the Commonwealth, is that appellant removed from the cash drawer the ticket and $323.82 in cash Bridenhagen had deposited there; pocketed that money, along with an additional

$300 from the cash drawer; and placed that cash ticket and one other in the charge folder, which she believed Spradlin checked only once a month, in an effort to delay Spradlin's discovering $623.82 was missing from the cash drawer. This same evidence, including the denial of all other employees with access to the safe that they had taken any of the money and appellant's lack of concern for the fact that it was missing, supported the finding that appellant also took the $305.18 missing from the petty cash box, which was also stored in the safe.

The facts of this case are readily distinguishable from those in Simmons v. Commonwealth, 219 Va. 181, 247 S.E.2d 359 (1978), and Webb v. Commonwealth, 204 Va. 24, 129 S.E.2d 22 (1963), relied upon by appellant. In Simmons, although the defendant's unexplained absence from his job site after a theft there was suspicious, no evidence established whether the defendant ever appeared to work his shift as scheduled on the night in question, and it was undisputed that the gas station had been robbed on 24 previous occasions and was left unlocked and unguarded overnight before the theft at issue was discovered. 219 Va. at 182-83, 247 S.E.2d at 359-60. On those facts, the Court held "resolution of the critical issue of whether Simmons asported the missing items from the station depend[ed] upon conjecture and surmise rather than upon proven facts" and, thus, that reversal of his conviction was required. Id. at 183, 247 S.E.2d at 360. In appellant's case, in contrast to Simmons, the evidence supported a finding that appellant was the only person who could have taken the money. Coupled with appellant's untruthful statements about the number of cash tickets she prepared in Spradlin's absence and the indifferent attitude she displayed when Spradlin discovered the money was missing, this evidence was sufficient to prove appellant's guilt.

In Webb, the Court held the evidence was insufficient to support the defendant's conviction for embezzlement because "[a]ll of the employees of the office received payments on accounts, made change from the cash drawer, borrowed money from it, and cashed their own

checks and those of customers out of the cash drawer." 204 Va. at 35, 129 S.E.2d at 30. In addition, the shortage claimed in that case involved several years' worth of financial records, and the Court held a detailed accounting would be required before it could be determined whether the defendant was responsible for any shortfalls. Id. In appellant's case, by contrast, the period of time involved was approximately ten days rather than several years; the evidence supported a finding that appellant handled the paperwork for all relevant cash transactions during that period of time; and the audit performed by Spradlin, known for her "meticulous[ness]" in performing her job, definitively established a shortfall of $929. Finally, as set out above, the evidence supported a finding that the only other people with access to the funds were other employees of the company who worked in the office, and those employees all testified and denied taking the money. Unlike in Webb, the evidence established appellant was the only person who could have converted the funds.

The only reasonable hypothesis flowing from the evidence, viewed in the light most favorable to the Commonwealth, was that appellant embezzled from her employer United States currency having a value of more than $200, as charged in the indictment. Thus, we hold the evidence was sufficient to support appellant's conviction for embezzlement, and we affirm.

Affirmed.