## Salem

DWAYNE ALAN LONG

v.

COMMONWEALTH OF VIRGINIA

No. 0247-88-3

Decided May 2, 1989

COUNSEL

Mark Richard Tolland, for appellant.

Linwood T. Wells, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General; Jan F. Hoen, third-year law student, on brief), for appellee.

OPINION

BENTON, J.—Dwayne Alan Long presents for review five questions, which, succinctly stated, raise the issues (1) whether Long's dog was a "means" as used in the malicious wounding statute,[1] (2) whether the Commonwealth proved all the elements necessary to support the malicious wounding conviction, and (3) whether the evidence established that Long acted in self defense. For the rea-

---

[1] Code § 18.2-51 states:

If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

sons that follow, we affirm the conviction.

Frank and Gary Boothe were guests at Long's home in Botetourt County. The testimony is in conflict concerning the events that gave rise to the prosecution. According to the Boothe brothers, Long invited them over to smoke marijuana and promised to provide gasoline for their pick-up truck because the drive was approximately twenty miles each way. Long testified, however, that he invited the Boothes to his property to deer hunt. Long also testified that he only promised to allow the Boothes the opportunity to siphon gas from a neighbor's truck.

After they arrived at the Long residence, the Boothes drove to a nearby convenience store with Long and purchased two quarts of beer. When they returned to the residence, an altercation developed between Long and Gary Boothe over the gasoline. Gary Boothe testified that he objected to the plan to steal the gasoline and was angry with Long for having lured him such a long distance under "false pretenses." Long was less specific concerning the reason the argument began; however, he did recall Gary Boothe making a comment about "false pretenses."

The argument soon developed into a fist fight. Gary Boothe admitted that he "probably" hit Long first. Frank Boothe stood some fifteen feet away and was not involved in the fight. At some point in the fight, Long yelled to his wife to call the police and broke free from Gary Boothe. Long went twenty feet to a spot where his pitbull terrier was chained. According to the testimony of Gary and Frank Boothe, Long unchained the dog, pointed at Gary, and said "Sic him, Dozer. Kill." The dog attacked Frank Boothe, instead, biting his leg. As the dog released Frank Boothe's leg and started off toward Gary Boothe and Long, who had resumed fighting, Frank Boothe grabbed the dog's collar. Frank Boothe testified that the dog bit him on the wrist before he was finally able to pin the dog between his legs. He kept the dog's head pressed to the ground, until Long called the dog. Long denied that he commanded the dog to attack or that he said, "kill." He said that the dog slipped from his grasp when he and Gary Boothe resumed the scuffle.

Long also testified that Gary Boothe was armed with a shotgun and threatened Long's wife with the gun when she came out of the residence in response to the commotion. Long's wife testified

that Gary Boothe pointed a rifle at her. Long also testified that Gary Boothe hit him in the chest with the butt of the shotgun. The Boothe brothers denied possessing a gun.

After Long regained control of the dog, the two brothers got into their vehicle and began to leave the property. In the meantime, Deputy Dave Mullins of the Botetourt County Sheriff's Department arrived to investigate the calls from Long's wife. He stopped the Boothe's pick-up truck in the driveway. While Mullins waited for the rescue squad to arrive, he conducted a cursory "plain view" inspection of the truck and the area around the truck. He saw no guns. The Boothes told him that they did not have a gun. No gun was found on the premises.

At the conclusion of all the evidence, the trial judge stated he believed the Boothe brothers' version of the incident. The trial judge convicted Long of malicious wounding and sentenced him to a suspended term of five years in the penitentiary and to three years probation.

Code § 18.2-51 proscribes the infliction of bodily injury upon another "by any means." The statute, by its explicit terms, does not contain a limitation upon the means employed. Indeed, the focus of the established "test of the offense of maliciously . . . causing bodily injury is the intent with which the result is accomplished rather than the nature of the means. . . ." *Dawkins v. Commonwealth*, 186 Va. 55, 63, 41 S.E.2d 500, 504 (1947). We disagree, therefore, with Long's contention that, absent proof that the dog was trained to attack or vicious, the conviction of malicious wounding must be reversed. Because the statute specifies "any means," the Commonwealth was not constrained to prove that the method Long used to cause bodily harm was inherently dangerous. *See id.*; *Fletcher v. Commonwealth*, 209 Va. 636, 639-40, 166 S.E.2d 269, 272-73 (1969) (assault with hands or feet will suffice as "means" provided the requisite intent is established). Once the Commonwealth established a basis upon which the trier of fact could have reasonably inferred that Long intended to command the dog to attack, the character of the dog was not relevant to the proof of "means."

In assessing the sufficiency of the evidence to sustain the conviction, "it is our duty to consider [the evidence] in the light most favorable to the Commonwealth and give [the evidence] all

reasonable inferences fairly deducible therefrom." *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). We also are aided in our assessment of the evidence in this case by the trial judge's statement at the conclusion of the trial that he weighed the conflicting evidence in favor of the testimony of the Boothes. *See Johnson v. Commonwealth*, 142 Va. 639, 640-41, 128 S.E. 456, 456 (1925). With these principles as our guide, we conclude that the evidence established malice.

> Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necesarily [sic] result in injury. Its existence is a question of fact to be determined by [the trier of fact].

*Dawkins v. Commonwealth*, 186 Va. at 61, 41 S.E.2d at 503. Long's conduct in releasing his dog while saying, "sic him, Dozer. Kill!," evinced ill will sufficient to constitute malice.

■ Moreover, Long's actions and command to the dog establish that Long intended that his dog would "maim, disfigure, disable, or kill" his adversary. Code § 18.2-51. "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." *Ridley v. Commonwealth*, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). Intent may be shown by a person's conduct and by his statements. *Hargrove v. Commonwealth*, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974). That the dog attacked and wounded the brother who was not involved in the fray neither diminishes the maliciousness of the act nor negates the intent. *See Riddick v. Commonwealth*, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983) ("if an accused shoots at another intending to kill him, and a third person is killed because of the act, that same intent follows the bullet and is transferred to the killing of the third person, even if such death was accidental or unintentional").

■ Finally, the evidence revealed that Long had broken away from the fray, was distant from the combat, and was no longer defending himself when he released the dog. Although Long defended the case on the ground that he only got the dog because the Boothes threatened him and his wife with a gun and that the "dog broke loose," the trial judge stated that he weighed the con-

flicting evidence in favor of the testimony of the Boothes. The trial judge's determination of "the credibility of witnesses and the weight to be given their testimony are questions exclusively within the province of [the trier of fact]." *Barker v. Commonwealth*, 230 Va. 370, 373, 337 S.E.2d 729, 732 (1985) (citations omitted). We cannot say as a matter of law that the trial judge erred in resolving against Long the conflicting evidence concerning the presence of guns and, thus, whether he acted in self defense when he released the dog.

Accordingly, we conclude that the evidence established beyond a reasonable doubt the charge of malicious wounding and we affirm the judgment.

*Affirmed.*

Coleman, J., and Duff, J., concurred.