COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Lemons[*]
Argued at Alexandria, Virginia


DEBRA ANN WILSON

                                    MEMORANDUM OPINION[**] BY
v.    Record No. 2061-98-4          JUDGE DONALD W. LEMONS
                                          MAY 2, 2000
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                   Frank A. Hoss, Jr., Judge

         Robert B. Beasley, Jr. (LeClair Ryan, on
         brief), for appellant.

         Eugene Murphy, Assistant Attorney General
         (Mark L. Earley, Attorney General, on brief),
         for appellee.


     Debra Ann Wilson appeals her conviction for election fraud

in violation of Code § 24.2-1016.  On appeal, she argues that

the evidence was insufficient to support her conviction because

it failed to prove that she made a willfully false statement on

her voter registration form and, even if the evidence did prove

that she made such a statement, it did not prove that the voter

registration form was the form required by Title 24.2.  Finding

no error, we affirm.

_____

     [*] Justice Lemons prepared and the Court adopted the opinion
in this case prior to his investiture as a Justice of the
Supreme Court of Virginia.

     [**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## I.  BACKGROUND

In January of 1997, Wilson lived in an apartment complex on Midsummer Lane in Woodbridge, Virginia, a residence in the 13th State House District.  Between January 14, 1997 and June 24, 1997, Wilson received six monthly electric bills at that residence showing usage amounts of 893 kilowatt hours, 713 hours, 822 hours, 668 hours, 674 hours and 325 hours, respectively.  In early May, one of Wilson's children was sent home when the school's electricity went out and the child was seen at this residence by the property manager.  On June 19th or 20th, Wilson told the property manager that she planned to move out that weekend and wrote him a letter dated June 20th confirming these plans.  The property manager informed her that there was a sixty-day notice requirement and held her responsible for rent until July 30th.

On April 11, 1997, Wilson signed and submitted to the Prince William County Voter Registration Elections Office an "Appointment of Campaign Treasurer" form in which she claimed to be living in a townhouse on Beale Court in Dale City, Virginia, a residence in the 51st House District.  After that office notified her that she was registered as living in the 13th District, Wilson signed and submitted a new voter registration form later that day stating that she was living at the residence in the 51st District.

Also on April 11, 1997, Wilson applied to the Northern Virginia Electric Cooperative for electrical service at the Beale Court residence.  On April 14th, the home was connected and Wilson's May electric bill for that residence showed 25 kilowatt hours used over 14 days.  Wilson's subsequent electric bills showed usage amounts of 28 kilowatt hours in June, 27 hours in July, 240 hours in August, 48 hours in September and 509 hours in October.  Between April 16 and June 12, Wilson was billed for using 1,000 gallons of water at this residence.

On July 11, 1997, Wilson changed her address on her driver's license to the Beale Court address.  Sometime after the 20th of August, Wilson and two of her three daughters used a U-Haul truck to move their belongings to the Beale Court address and began staying there on a nightly basis.  On August 26, 1997, Wilson filled out transfer request forms for her children and notified the two daughters' schools that the family was no longer living at the Midsummer Lane address and had moved to the Beale Court residence.

On November 3, 1997, Wilson was indicted by a grand jury on one count of election fraud.  At trial, an employee of the electric company powering the Midsummer Lane residence testified that the usage amounts shown on Wilson's electric bills between May and late June were consistent with people living at that location.  An employee of the electric company providing power to the Beale Court address testified that Wilson's electric

bills between May and July showed "extremely low usage" and were not consistent with people living at that address. An employee of the Virginia American Water Company testified that Wilson's water bill for the Beale Court address showed a usage amount inconsistent with a family of three living there. An employee of the Prince William County Voter Registration Elections Office testified that the Midsummer Lane residence was located in the 13th District and that the Beale Court residence was located in the 51st District. On March 10, 1998, a jury convicted Wilson of election fraud.

## II. ELECTION FRAUD

A candidate for election in a primary must be qualified to vote in the primary in which he or she seeks to be a candidate. See Code § 24.2-519. To be qualified to vote in the specific primary, the person must "register to vote as provided in this chapter" and once registered "shall be entitled to vote in the precinct where he resides." Code § 24.2-400. Applicants for registration "shall provide, subject to felony penalties for making false statements pursuant to § 24.2-1016, the information necessary to complete the application to register." Code § 24.2-418. "The form of the application to register shall require the applicant to provide . . . [an] address of residence in the precinct . . . ." Id. Code § 24.2-1016 provides in pertinent part, "Any willfully false material statement or entry made by any person in any statement, form, or report required by

this title" constitutes "the crime of election fraud." Pursuant to that chapter, the State Board of Elections must provide for the continuing operation and maintenance of a central record-keeping system (the "Virginia Voter Registration System") for all voters registered in the Commonwealth and, among other things, must "provide to each general registrar, voter registration cards for newly registered voters and for notice to registered voters on the system of changes and corrections in their registration records." Code § 24.2-404.

Plainly, pursuant to Virginia Code, a voter registration card must be filed in order to establish the qualification to vote. Plainly, qualification to vote in the primary in which a person seeks to be a candidate is necessary to qualify as a candidate. Therefore, a voter registration card is a "statement, form or report required by [Title 24.2]." Code § 24.2-1016.

The form utilized by Wilson which is the subject of this prosecution, was repeatedly referred to by witnesses and counsel as a "Voter Registration form." Ms. Green, who was employed by the Prince William County Voter Registration Elections Office testified that Wilson told her on April 11th that she had the "form" to fill out, that Green should "make [Wilson] on [their] books at the address that's [sic] she's currently at . . ." and that Wilson would fill it out and get it to Green's office that day. Green then testified that Wilson filed the new Voter

- 5 -

Registration form that day by courier. Green stated, "we had the whole application" and indicated that it was then made into "what goes into the filing." When Green was asked again whether she received a new Voter Registration form from Wilson, she responded, "A complete one" and "the one that I got on April 11th." Asked if she had any other contact with Wilson after receiving the voter registration form, Green answered, "After we received it? No." Defense counsel asked Green if she spoke with Wilson personally concerning "the form" and asked whether Green reviewed "the form" with Wilson. Green responded, "[N]o. [Wilson] just said she had the form". Defense counsel, during a bench conference, referred to the Commonwealth's exhibits as "the registration forms." The Commonwealth's attorney introduced the form into evidence as "the Voter Registration application . . . in the attached way it came in."

In reference to the first card she filled out, Wilson herself stated "I filled out the card that you mail to Richmond." She later referred to the second card she sent as her "registration form to vote." She testified that the "form that [she] signed on April 11[th]" indicated what she thought was her home address at that time. When asked to identify the form, Wilson stated, "That is my voter registration application." She testified that it was the one she signed and had forwarded to the Prince William registrar's office. The

second card is the subject of this prosecution and is identical in form to the first.

The evidence is sufficient to establish directly or by inference that the "card that you mail to Richmond" and the "registration form to vote" is the form required to be filed in order to qualify to vote pursuant to Code §§ 24.2-400 and -404. Furthermore, it follows from reading Code §§ 24.2-418 and -1016 together that Wilson, at the very least, made a "statement" and that the "statement" was "required" under the relevant title.

With respect to whether the evidence was sufficient to demonstrate that Wilson lived in the 13th District when she filled out the form in April stating that she lived in the 51st District, we consider the record "'in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible therefrom. In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth and regard as true all the credible evidence favorable to the Commonwealth . . . .'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (citation omitted). The credibility of the witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989) (citation omitted).

At trial, the Commonwealth introduced substantial testimony and documentary evidence that Wilson had continued to live at

the Midsummer Lane residence long after she stated on the voter registration form dated April 11, 1997 that she was living at the Beale Court address.  The evidence included records showing electricity and water usage, records from the Department of Motor Vehicles and school records.  Additionally, the property manager of the Midsummer Lane residence testified that Wilson moved out in June of 1997.  On June 19th or 20th, Wilson called the property manager and informed him that she was moving out of the residence that weekend.  She also confirmed her plans in a letter dated June 20, 1997.  As a result of her late notice she remained obligated to pay rent until July 30, 1997.  It was not until August of 1997 that Wilson moved her belongings into her new residence or stayed there "on a nightly basis."  Furthermore, an employee of the Prince William County Voter Registration Elections Office testified that the residence located on Midsummer Lane was located in the 13th State House District and that the residence located on Beale Court was in the 51st District.

The evidence was sufficient to support the jury's verdict that Wilson made "a false material statement" on the voter registration card required to be filed by Title 24.2 in order for her to be a candidate for office in the primary in question.

### III.  CONCLUSION

Because the determination of whether a voter registration form is required by Title 24.2 is a matter of law and because

the evidence is sufficient to establish that the form utilized in this case was the form required by Title 24.2 and because the evidence was sufficient to prove that Wilson made a willfully false statement in violation of Code § 24.2-1016, we affirm the conviction.

Affirmed.

Elder, J., dissenting.

I have no material disagreement with the majority's legal conclusion that the voter registration form appellant filed was one required by Title 24.2. Critically, however, neither the instructions given the jury nor the evidence offered at trial permitted the jury to conclude that the voter registration form appellant filed was a "statement, form, or report required by [Title 24.2]," as charged in the indictment and required by Code § 24.2-1016. I would hold the evidence in this case was insufficient to support appellant's conviction for violating Code § 24.2-1016. Therefore, I respectfully dissent.

Here, the jury was instructed that it should find appellant guilty of election fraud if the evidence proved beyond a reasonable doubt that appellant "made a willfully false material statement or entry" and that it was "made on a form or report required by law." The jury was not instructed, as required by the statute and contained in the indictment, that the form had to be one required by a specific law, Title 24.2. Further, the jury was not instructed that appellant had to be registered to vote in the district or precinct in which she was running for office. Finally, the evidence did not establish either of these requirements.

County Voter Registration and Elections employee Donna Green testified that her job was to confirm voter registration information for candidates running for elected office. On April

- 10 -

11, 1997, the deadline for the filing of forms for candidates running in the June primary, Green received appellant's appointment of campaign treasurer form. That form indicated appellant was filing as a candidate for the House of Delegates in the 51st House District and listed an address on Beale Court, which was located in the 51st House District. However, Green determined that appellant was not registered to vote at that address. Instead, she was registered to vote at an address on Midsummer Lane, which was located in a different house district. Upon discovering this fact, Green notified appellant that April 11, 1997, that very day, "was the final day to register, or to change any addresses for filing for candidates" and that appellant "should get her address correct for the file since she was filing as a candidate in the 51st [House District]."

Although Green suggested that appellant "should" file a new voter registration form, no evidence established that the form appellant filed was a "statement, form, or report required by [Title 24.2]." Green testified that her "duty is . . . to check the candidate to be sure the candidate is registered to vote in the county." (Emphasis added). Green did not testify that appellant had to be registered in the house district in which she was running. When Green began her investigation, she found two Debra A. Wilsons registered to vote in the county, but neither listed a Beale Court address, so she could not determine whether either one was appellant. Green "needed to find out

- 11 -

whether or not the Debra A. Wilson filing the treasurer's form was either of the Debra A. Wilsons registered to vote in the county." Prior to filing the challenged form, appellant was, in fact, registered to vote in the county. Language on the voter registration form appellant filed on April 11, 1997 provided that "[i]ntentionally making a materially false statement on this form constitutes the crime of election fraud," but this language fails to establish that the form was one required by Title 24.2 or any other law.

Further, no evidence established that the appointment of campaign treasurer form was a form that was required to be filed by Title 24.2. Green testified that April 11, 1997 was the last day for the filing of such forms for the June primary. However, no evidence established that filing the form was a necessity, and language on the form itself indicated that "[a] candidate who fails to file this form is considered his own Treasurer."

For these reasons, I would hold the evidence was insufficient to prove that the voter registration form on which appellant allegedly made a willfully false statement was a form required by Title 24.2. I would reverse and dismiss appellant's conviction for election fraud without reaching the issue of whether she made a willfully false statement. Therefore, I dissent.