COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bray and Frank
Argued at Chesapeake, Virginia


JACOB SHANE SMITH, JR.

MEMORANDUM OPINION[*] BY
v.    Record No. 3001-99-1          JUDGE RICHARD S. BRAY
                                      MARCH 13, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
Glen A. Tyler, Judge

Gregory K. Pugh for appellant.

Susan M. Harris, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Jacob Shane Smith, Jr. (defendant) was convicted in a bench

trial of attempted malicious wounding and related use of a

firearm.  On appeal, he challenges the sufficiency of the evidence

to establish the requisite intent and malice.  Finding no error,

we affirm the convictions.

The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

I.

In reviewing the sufficiency of the evidence, we consider the

record "'in the light most favorable to the Commonwealth, giving

---

[*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

it all reasonable inferences fairly deducible therefrom.  In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth . . . .'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (citation omitted).  The credibility of the witnesses and the weight accorded testimony are matters within the province of the trier of fact.  Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  Thus,

> the fact finder is not required to accept entirely either the Commonwealth's or the defendant's account of the facts. Similarly, the fact finder is not required to believe all aspects of a defendant's statement or testimony; the judge or jury may reject that which it finds implausible, but accept other parts which it finds to be believable.

Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993) (citation omitted).  The judgment of the trial court will not be disturbed unless plainly wrong or unsupported by the evidence.  See Code § 8.01-680.

In the early morning hours of November 27, 1998, Exmore Police Sergeant William R. Bottom responded to a "significant shooting" at "Club 13 . . . just south of Eastville."  Arriving at the scene, Bottom observed "forty or fifty people running around" the parking area, "a lot of them . . . heavily intoxicated." Numerous spent "shell casings" collected by Bottom and others indicated "380" and "nine millimeter" handguns and a "410" shotgun

-

had been discharged during the fray.  The ensuing investigation

disclosed two men had been shot, one, Mark Hines (Hines), the

victim of the instant offense, fatally.

When initially questioned by police, defendant acknowledged

his presence at Club 13 at the time of the offense but denied

owning or discharging a weapon.  Upon further inquiry, however, he

later admitted possessing and firing a "380 caliber semi-automatic

firearm" outside the club but insisted he "shot the weapon

straight up in the air."  Defendant also recounted to police a

confrontation between the victim, armed with "a gun," and Norris

Malone, during which the victim fired the weapon as others "took

him away."  Defendant claimed he subsequently learned of the

murder.

At trial, Corey Smith testified that, prior to the

shooting, Hines, angry after being assaulted inside the club,

"came out . . .[,] went to his car[,] . . . got" a shotgun and

re-entered the building.  Shortly thereafter, Hines "came back

out" and confronted defendant and Norris Malone in the parking

area, demanding to know why "they had jumped him inside."[1]

Others intervened and Hines was escorted to a nearby car,

joining a group of men, including his nephew, Joseph Hines.

Joseph Hines then "took the gun from him," immediately heard

---

[1] Smith initially testified that Hines "sho[t] the gun past [sic]" defendant during this encounter but, later, maintained Hines had not discharged the weapon.

-

three shots and Hines "fell to the ground," mortally wounded. At the time of the offense, Joseph Hines observed defendant "shooting straight," "towards the car," "in me and my uncle's direction," a "bullet [striking] the front of" the vehicle.

According to several additional witnesses, defendant fired from three to six shots "at body level," "towards" Hines from a range of eight to fifty feet. Such testimony is substantially corroborated by forensics evidence confirming that a "slug" recovered from Hines' car had been "fired from a barrel having [like] class characteristics" as the weapon discharged by defendant. Moreover, shell casings discovered at the scene were matched to defendant's firearm. Additional forensic evidence disclosed that defendant's weapon had not fired the fatal shot. Hence, defendant was indicted for the attempted malicious wounding of Hines.

Defendant testified that, when inside Club 13 on the evening of the offense, "some guys" began "fighting," and he escorted his girlfriend to the car. He recalled "there was already shooting so [he] grabbed [his] pistol from the glove compartment," and, for "no specific reason," "stood . . . by the trunk," "fired all [his] shots," and returned the gun to the car. Defendant then proceeded toward the club and observed Hines, armed with a shotgun, "running towards" Norris Malone, accusing Malone of assaulting him. Defendant, assisted by others, restrained Hines, but, nevertheless, he "fired a shot" while escorted away. Defendant

-

re-entered the club and subsequently heard others "hollering somebody . . . got shot." Defendant admitted lying to police, explaining he was "scared."

## II.

"In order to convict an accused of attempted malicious wounding, the Commonwealth must prove that the accused: (1) intended to 'maliciously shoot, stab, cut or wound any person or by any means cause bodily injury with the intent to maim, disfigure, disable or kill'; and (2) committed a direct but ineffectual act toward this purpose." Crawley v. Commonwealth, 25 Va. App. 768, 772, 492 S.E.2d 503, 505 (1997) (citing Code § 18.2-51). "'The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged.'" Id. (citation omitted). "The requisite specific intent 'may, like any other fact, be shown by circumstances. Intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it.'" Moody v. Commonwealth, 28 Va. App. 702, 706, 508 S.E.2d 354, 356 (1998) (citation omitted).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). However, the Commonwealth is required to exclude only

-

such reasonable "hypothesis . . . that . . . 'flow[s] from the evidence itself, and not from the imagination of defendant's counsel.'" Tyler v. Commonwealth, 254 Va. 162, 166, 487 S.E.2d 221, 223 (1997) (citation omitted). The fact finder is permitted to draw reasonable and justified inferences from proven facts, including the inference "that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Moody, 28 Va. App. at 706-07, 508 S.E.2d at 356. "'[W]hether the required intent exists is generally a question for the trier of fact.'" Crawley, 25 Va. App. at 773, 492 S.E.2d at 505 (citation omitted).

"'Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation.'" Luck v. Commonwealth, 32 Va. App. 827, 833, 531 S.E.2d 41, 44 (2000) (citation omitted). "'Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will[,]'" Long, 8 Va. App. at 198, 379 S.E.2d at 475 (citation omitted), and "may be inferred 'from the deliberate use of a deadly weapon.'" Doss v. Commonwealth, 23 Va. App. 679, 686, 479 S.E.2d 92, 96 (1996) (citation omitted). Similarly, use of a deadly weapon may support an inference of intent to maim, disfigure or kill, when attended by circumstances otherwise suggestive of such intent. Vaughan v. Commonwealth, 34 Va. App. 263, 268, 540 S.E.2d 516, ___ (2001).

-

Here, the evidence established that the defendant and Hines had argued prior to the murder, Hines accusing defendant of assaulting him inside the club.  Shortly thereafter, defendant armed himself with a deadly weapon and repeatedly discharged the firearm while pointed at Hines, then a short distance away. Defendant lied to police, first denying possession of the weapon and later admitting only to firing the gun "into the air." Testifying at trial, defendant explained he obtained the weapon from the car and fired it for "no . . . reason."  Such evidence supported the factual finding by the trial court that defendant's testimony didn't "make sense" and the attendant conclusion that "defendant shot towards Hines" with a deadly weapon "for the purpose of striking [him]," conduct clearly evincing the requisite intent to maliciously "maim, disfigure, disable or kill" Hines.

Accordingly, the evidence was sufficient to prove beyond a reasonable doubt all elements of attempted malicious wounding, and we affirm the trial court.

<u>Affirmed.</u>

-