COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Humphreys and Russell
Argued at Winchester, Virginia

**PUBLISHED**

RONNIE LEON BRYANT

v.      Record No. 1907-17-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
SEPTEMBER 10, 2019

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Helen Randolph, Assistant Public Defender II, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


On August 29, 2016, a grand jury for the Circuit Court of Arlington County ("circuit

court") indicted appellant Ronnie Leon Bryant ("Bryant") for five felonies and one

misdemeanor:  four counts of felony credit card theft, in violation of Code § 18.2-192; felony

credit card fraud, in violation of Code § 18.2-195; and misdemeanor identity theft, in violation of

Code § 18.2-186.3.  Following a bench trial, the circuit court convicted Bryant of all charges and

sentenced him to an aggregate sentence of six years' incarceration.[1]

_____

[1] As noted by the Commonwealth, the sentencing order contains a scrivener's error
entered in Case No. CR16-1616, which stated that Bryant was convicted of credit card theft
rather than credit card fraud.

Bryant assigns the following three errors on appeal:

I.      The trial court had no subject matter jurisdiction to try the four counts of credit card theft and was without authority to impose punishment for such crimes.

II.     The trial court erred as a matter of law in holding the fraudulent use of credit cards is evidence of theft of the credit cards.

III.    The trial court erred in determining that the Commonwealth had proved credit card theft of one of the credit cards, where there [was] insufficient evidence of intent to use the card in violation of the law.

## I.  BACKGROUND

In accordance with familiar principles of appellate review, we recite the facts in the light most favorable to the Commonwealth, the prevailing party at trial. Scott v. Commonwealth, 292 Va. 380, 381 (2016).

Viewed in this light, the evidence reflects that on June 4, 2016, Bryant purchased multiple gift cards at an Arlington County CVS on Jefferson Davis Highway using three credit cards that were not issued in his name. Arlington County police officers subsequently arrested Bryant. At the time of his arrest, police officers discovered four credit cards belonging to a woman named Angelique Mais ("Ms. Mais") on Bryant's person, including the three credit cards that Bryant used to purchase the gift cards.

On August 29, 2016, a grand jury indicted Bryant for four counts of felony credit card theft, felony credit card fraud, and misdemeanor identity theft. The four counts related to the credit card thefts alleged that

> [o]n or about June 4, 2016, in the County of Arlington, did take, obtain, or withhold a credit card or credit card number from the person, possession, custody, or control of another without the cardholder's consent, or did receive the credit card or credit card number, knowing that it had been so taken, obtained or withheld,

- 2 -

with intent to use it or sell it, or to transfer it to a person other than the issuer or the cardholder, to wit a [credit card associated with each charge].

On September 30, 2016, Bryant filed a motion *in limine* to dismiss the four indictments related to the credit card thefts for "lack of venue." Bryant noted that Ms. Mais, a resident of Washington, D.C., testified at the preliminary hearing that she "was last aware of possessing her credit cards . . . while at Whole Foods in Silver Spring, Maryland." Accordingly, Bryant argued that the completed crime of credit card theft "did not, and could not, have occurred in Arlington County, Virginia." As a result, Bryant argued that venue in Arlington County was improper and requested that the circuit court dismiss the four indictments related to the credit card thefts.

On October 6, 2016, the circuit court held a hearing on Bryant's motion. The Commonwealth argued that pursuant to Code § 18.2-198.1, venue for a credit card theft prosecution is appropriate wherever a credit card belonging to another is "used, attempted to be used, or possessed with the intent to use." The Commonwealth added that it met its venue burden because the evidence would reflect that Bryant used three of the four stolen credit cards in his possession at the CVS in Arlington County. Alluding to the fourth credit card that Bryant did not use at the CVS, the Commonwealth argued that the issue of whether Bryant possessed the requisite intent to use that particular stolen credit card in Arlington County remained a question for the fact finder. The circuit court took the matter under advisement pending the presentation of evidence, stating that "the trial judge can strike the case" if the Commonwealth failed to meet its burden in establishing proper venue.

On December 28, 2016, a bench trial took place. There, Alex Rodriguez ("Rodriguez"), the assistant store manager at the Arlington County CVS on Jefferson Davis Highway testified about the events that took place during the evening and early morning hours of June 3-4, 2016.

At approximately 11:30 p.m. on June 3, 2016, Rodriguez noticed Bryant walking through the CVS holding a stack of gift cards. Rodriguez then watched Bryant walk to the self-checkout location at the front of the store and purchase five $100 gift cards in separate transactions. Rodriguez testified that the store required any customer purchasing over $500 in gift cards to present identification. With Bryant purchasing each of the $100 gift cards in separate transactions, however, the store did not require Bryant to show any identification. Rodriguez called the police after Bryant refused assistance from a cashier and purchased the fourth gift card.

The Commonwealth admitted into evidence both "electronic journal reports" from each of Bryant's gift card purchases and surveillance footage of Bryant purchasing the gift cards. Rodriguez explained that CVS's computer system automatically creates electronic journal reports that serve as records of completed customer transactions. The electronic journal reports contain the date, time, and store location of each transaction. The reports also provide information about the checkout lane used and the name of the cashier, or lack thereof, as well as a general description of any items purchased and their cost.

Justin Todd ("Todd"), an organized retail crime manager at CVS, testified for the Commonwealth about additional records of Bryant's gift card purchases. Notably, Todd testified regarding five point of sale ("POS") transaction reports from June 3, 2016, which were generated from one of CVS's "internal systems." According to Todd, the internal system "tracks transactions and pretty much anything done on the POS in our stores, company-wide." Todd also explained that the POS transaction reports differ from electronic journal reports in that they provide "a little bit more information, such as credit card information." The Commonwealth

admitted the five POS transaction reports into evidence, which reflected Bryant's five separate gift card purchases utilizing three different credit cards.

Arlington County Police Officer Tyler Bennett ("Officer Bennett") testified that he was dispatched to the CVS on Jefferson Davis Highway the night of June 3, 2016. Just before midnight, as he approached the CVS, Officer Bennett saw a man that he later identified as Bryant standing on a street corner and within eyesight of the CVS. Officer Bennett illuminated Bryant with the spotlight on his police cruiser and proceeded to get out of his vehicle to speak with Bryant.

When Officer Bennett asked Bryant what he was doing at the CVS, Bryant replied that he purchased five or six, $100 gift cards from the store. Bryant stated that he purchased the gift cards "with a credit card." Bryant proceeded to show Officer Bennett a "golden American Express card" bearing the name "Angelique Mais." When Officer Bennett patted down Bryant, Officer Bennett noticed "what felt like a small stack of . . . credit cards" in Bryant's pocket. Officer Bennett did not remove or ask to see these items during the pat down.

Officer Bennett testified that when he asked Bryant for his name, Bryant stated that his name was "Charles Brown." Bryant stated that his date of birth was May 9, 1964, and also provided Officer Bennett with a social security number. The information that Bryant provided to Officer Bennett produced no results in a national, state, and local law enforcement database. At that point, Officer Bennett testified that he asked Bryant for his social security number a second time. Bryant, however, provided Officer Bennett with a different number. Officer Bennett finally identified Bryant using a mobile fingerprint scanner, which prompted Bryant to provide Officer Bennett with his real date of birth and social security number. A record search of Bryant's real name revealed that Bryant had an outstanding warrant.

After arresting Bryant on the warrant, Officer Bennett discovered "the gift cards that he appeared to have spoke of [sic] before in his black satchel." Officer Bennett also recovered three more credit cards from Bryant's front right pocket in addition to the American Express card that Bryant previously presented to him. Officer Bennett testified that all of the credit cards belonged to Angelique Mais. When Officer Bennett inquired about the credit cards, Bryant told Officer Bennett that he found the American Express card on the ground. Later, however, Bryant informed Officer Bennett that he found the American Express card in a trash can, "and then he said he found it in an envelope."

At trial, Ms. Mais testified that she had never seen Bryant prior to the preliminary hearing and did not give Bryant permission to use or possess her credit cards. Ms. Mais also testified that she did not know that her credit cards were missing until a police officer visited her home on June 4, 2016. Ms. Mais identified all four credit cards found on Bryant's person and confirmed that they belonged to her. Ms. Mais stated that she was not in Arlington on June 3, 2016, or in the early morning hours of June 4, 2016. Finally, Ms. Mais could not identify the last time that she visited Arlington County.

Bryant made a motion to strike the evidence at the conclusion of the Commonwealth's evidence. Bryant argued *inter alia* that Ms. Mais's testimony demonstrated that the credit card thefts did not occur in Arlington County. Additionally, Bryant argued that the fact that he did not use one of the credit cards at the CVS indicated a lack of intent to use that specific credit card. Thus, Bryant contended that the Commonwealth did not prove that particular credit card "was ever intended to be used as a stolen credit card."

The circuit court denied Bryant's motion to strike and subsequently found Bryant guilty of all charges. Explaining its decision, the circuit court noted that

> [t]he evidence . . . is clear and overwhelming that . . . the theft charge has been proven. Because [the] Commonwealth doesn't have to prove he literally took them from Ms. Mais, but it's the use of the card, it's the possession of the card, withholding of the credit card, obtaining the credit card knowing that you do not have permission to use it.

The circuit court further found that Ms. Mais did not give Bryant, a stranger, permission to use her credit cards and that Bryant's possession and use of her cards were "evidence of the theft." The circuit court also relied upon the fact that Bryant had admitted to using at least one of Ms. Mais's credit cards as evidence of Bryant's guilt and noted that "the connections are insurmountable."

The circuit court went on to explain that the circumstantial evidence presented by the Commonwealth was further evidence of Bryant's guilt. Specifically, the circuit court noted Bryant's decision to "immediately" check out after picking up the gift cards and his "inconvenient" method of purchasing the cards in separate transactions, using three separate credit cards that he was not authorized to use. Thus, the circuit court held that

> all of those transactions . . . were done with an eye toward that furtherance of theft and fraud. The fact that only three of the four cards were used doesn't give me any concern that his possession of the fourth card was with intent to improperly use them, because he used three of them, and all of them have the same person's name on it.

For all of the aforementioned reasons, the circuit court concluded that there was not "even a notion of reasonable doubt" as to Bryant's guilt. The circuit court later sentenced Bryant to an aggregate sentence of six years' imprisonment. This appeal follows.

II. ANALYSIS

A. Subject Matter Jurisdiction

With respect to Bryant's first assignment of error, although Bryant only argued in the circuit court that the Commonwealth's evidence was insufficient to establish venue in Arlington County, he now also argues for the first time on appeal that the circuit court lacked subject matter jurisdiction.

Bryant argues that the evidence did not establish that he committed any of the acts proscribed by Code § 18.2-192(1)(a)[2] in the Commonwealth and therefore the Circuit Court of Arlington County lacked subject matter jurisdiction to try him. Notably, however, Bryant does not style his first assignment of error as a challenge to the circuit court's territorial jurisdiction—that is, venue. Instead, in a convoluted brief and confusing oral argument, Bryant apparently attempts to position territorial jurisdiction as a necessary component of subject matter jurisdiction.

"Subject matter jurisdiction is the authority granted through constitution or statute to adjudicate a class of cases or controversies." Martinez v. Commonwealth, 296 Va. 387, 388 (2018) (quoting Gray v. Binder, 294 Va. 268, 275 (2017)). It follows that an appeal challenging

_____

[2] Bryant was charged with and convicted of four counts of credit card theft, in violation of Code § 18.2-192(1)(a), which provides that

> [a] person is guilty of credit card or credit card number theft when:
>
> He takes, obtains or withholds a credit card or credit card number from the person, possession, custody or control of another without the cardholder's consent or who, with knowledge that it has been so taken, obtained or withheld, receives the credit card or credit card number with intent to use it or sell it, or to transfer it to a person other than the issuer or the cardholder . . . .

A violation of Code § 18.2-192 is a felony "and is punishable as provided in [Code] § 18.2-95." Code § 18.2-192(2).

the subject matter jurisdiction of a trial court presents a question of law that an appellate court reviews *de novo*. See id.

Bryant never raised the issue of subject matter jurisdiction in the circuit court and while he is correct in asserting that "the lack of subject matter jurisdiction can be raised at any time in the proceedings, even for the first time on appeal by the court *sua sponte*[,]" Morrison v. Bestler, 239 Va. 166, 170 (1990), in fact, he makes what is essentially a venue argument. Despite Bryant's attempt to conflate the two, the law is clear that subject matter jurisdiction and territorial jurisdiction, also known as venue, are distinct legal concepts.

In its most basic sense, "[j]urisdiction . . . is the power to adjudicate a case upon the merits and dispose of it as justice may require." Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church, 296 Va. 42, 49 (2018) (quoting Shelton v. Sydnor, 126 Va. 625, 629 (1920)), cert. dismissed, 139 S. Ct. 942 (2019). To adjudicate a particular case upon the merits, a trial court must possess what our Supreme Court has termed "active jurisdiction," which requires several elements. See id. (citing Morrison, 239 Va. at 169; Farant Inv. Corp. v. Francis, 138 Va. 417, 427-28 (1924)). Those elements include the following:

> subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is in *rem seizure* of a *res*; and "the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree."

Id. (quoting Morrison, 239 Va. at 169). "All of these elements 'are necessary to enable a court to proceed to a valid judgment.'" Id.

"The element of subject matter jurisdiction and the other jurisdictional elements differ in several significant respects." Id. (internal quotation marks and citation omitted). As explained by our Supreme Court,

> [j]urisdiction of the subject matter can only be acquired by virtue of the Constitution or of some statute. Neither the consent of the parties, nor waiver, nor acquiescence can confer it. Nor can the right to object for a want of it be lost by acquiescence, neglect, estoppel or in any other manner. . . . [A]nd the want of such jurisdiction of the trial court will be noticed by this court *ex mero motu* [on its own motion].

Id. at 49-50 (quoting Humphreys v. Commonwealth, 186 Va. 765, 772-73 (1947)). "While a court always has jurisdiction to determine whether it has subject matter jurisdiction, a judgment on the merits made without subject matter jurisdiction is null and void." Porter v. Commonwealth, 276 Va. 203, 228 (2008) (citing Barnes v. American Fert. Co., 144 Va. 692, 705 (1925)).

In the Commonwealth, the General Assembly has granted the circuit courts subject matter jurisdiction over the specific class of cases involving the prosecution of felonious crimes and the rehabilitation of criminals, which unquestionably includes the prosecution of felony credit card theft and Bryant conceded as much at oral argument. See Mohamed v. Commonwealth, 56 Va. App. 95, 100 (2010). Specifically, Code § 17.1-513 provides all circuit courts with "original jurisdiction of all indictments for felonies and of presentments, informations and indictments for misdemeanors." It follows that all circuit courts in the Commonwealth possess subject matter jurisdiction over all felony prosecutions, including those for credit card theft.

Nevertheless, Bryant relies on Meeks v. Commonwealth, 274 Va. 798 (2007), for the proposition that because the theft of the credit cards may have taken place outside the

Commonwealth, *no* court in the Commonwealth possessed subject matter jurisdiction to try him for these offenses.

In fact, <u>Meeks</u> provides no support for Bryant's argument for multiple reasons. In <u>Meeks</u>, our Supreme Court held that the crime of credit card theft pursuant to Code § 18.2-192(1)(a) is not a continuing offense with venue lying in any jurisdiction into which the stolen property is transported as is the case with common law larceny and instead is complete when a defendant takes possession of the stolen credit card or number. <u>Id.</u> at 803-04. That case, however, exclusively concerned the issue of venue and not subject matter jurisdiction. Furthermore, Bryant ignores the fact that, immediately following the decision in <u>Meeks</u>, the General Assembly implicitly overruled it by specifically expanding the reach of the special venue statute for credit card theft—Code § 18.2-198.1—essentially restoring its status as a continuing offense by allowing prosecution for credit card theft in *any* county or city where a stolen credit card or credit card number is used, is attempted to be used, or is possessed with intent to commit credit card fraud or certain other credit card offenses.[3]

For those reasons, we conclude that Bryant's first assignment of error fails and hold that the circuit court clearly had subject matter jurisdiction to adjudicate the four counts of credit card theft against Bryant and possessed the statutory authority to impose punishment for those crimes.

---

[3] As also noted below in connection with Bryant's third assignment of error, on July 1, 2008, the General Assembly amended Code § 18.2-198.1 by adding the following sentence: "A prosecution for a violation of *§ 18.2-192* may be had in *any* county or city where a credit card number is *used, is attempted to be used, or is possessed with intent to violate* § 18.2-193, 18.2-195, or 18.2-197." <u>See</u> 2008 Acts ch. 797 (emphasis added).

- 11 -

## B. Bryant's use of the stolen credit cards

In his second assignment of error, Bryant argues that the "[circuit] court erred as a matter of law in holding the fraudulent use of credit cards is evidence of theft of the credit cards."[4] Bryant contends that while the unauthorized use of a credit card may be evidence that a prior taking of the credit card was done with the intent to commit fraud, the unauthorized use of a credit card alone does not prove that the party using it was the same individual who stole it.

We decline to address the merits of this assignment of error and consider it waived. Bryant's second assignment of error merely alleges that the issue was properly preserved "by pleading not guilty to the charge and noting an appeal."

Rule 5A:18 requires that "an objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Pursuant to this rule, "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." Edwards v. Commonwealth, 41 Va. App. 752, 760 (2003) (*en banc*) (citing Mounce v. Commonwealth, 4 Va. App. 433, 435 (1987)). "The purpose of the rule requiring an adequately articulated objection is to allow both the trial court and the opposing party 'the opportunity to intelligently address, examine, and resolve issues in the trial court' in order to avoid unnecessary appeals and retrials." Banks v. Commonwealth, 67 Va. App. 273, 285 (2017) (quoting Correll v. Commonwealth, 42 Va. App. 311, 324 (2004)). With the record devoid of any specific and timely objection to the circuit court's finding that Bryant's fraudulent use of credit cards

---

[4] Bryant's second assignment of error does not challenge the sufficiency of the evidence as related to either his convictions for credit card theft or credit card fraud.

evidenced his theft of the credit cards, we decline to consider the issue for the first time on appeal.

### C. Bryant's intent to commit credit card fraud

In his third assignment of error, Bryant argues that the circuit court erred in convicting him of the credit card theft charge related to the single credit card that he did *not* use at the CVS on Jefferson Davis Highway (CR16-1617) because "there [was] insufficient evidence of intent to use the card [in Arlington County]." In making this argument, Bryant apparently incorporates venue into a sufficiency of the evidence argument. In doing so, he repeats his assertion that Arlington County was not the appropriate venue to prosecute him for that charge because the relevant special venue statute requires proof that he possessed the stolen credit card or credit card number with intent to commit credit card fraud in Arlington County and the record fails to establish that.

"In a criminal prosecution, it is the Commonwealth's burden to establish venue." Bonner v. Commonwealth, 62 Va. App. 206, 210 (2013) (citing Pollard v. Commonwealth, 220 Va. 723, 725 (1980)). Despite Bryant's bald assertions to the contrary, venue is *not* an element of the offense. "Proof of venue is not a part of the crime. Thus, the prosecution need not prove where the crime occurred beyond a reasonable doubt, since venue is not a substantive element of a crime." Id. (quoting Morris v. Commonwealth, 51 Va. App. 459, 469 (2008); United States v. Griley, 814 F.2d 967, 973 (4th Cir. 1987)) (internal quotation marks omitted). "Instead, to establish venue the Commonwealth need only produce evidence sufficient to give rise to a 'strong presumption' that the offense was committed within the jurisdiction of the court." Id. at 211 (quoting Cheng v. Commonwealth, 240 Va. 26, 36 (1990)) (some internal quotation marks omitted). "When venue is challenged on appeal, we determine 'whether the evidence, when

viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" Morris, 51 Va. App. at 464-65 (quoting Cheng, 240 Va. at 36).

As relevant to this case, the General Assembly has enacted a number of statutes providing special venue provisions for crimes that may involve acts performed in more than one jurisdiction, including credit card theft, forgery, fraud, and unauthorized possession. One such provision pertinent here is Code § 18.2-198.1, which provides the appropriate venue specifically for credit card theft and credit card fraud. Specifically, Code § 18.2-198.1 provides that

> [n]otwithstanding the provisions of § 19.2-244, a prosecution for a violation of this article may be had in any county or city in which (i) any act in furtherance of the crime was committed; (ii) an issuer or acquirer, or an agent of either, sustained a financial loss as a result of the offense; or (iii) the cardholder resides. *A prosecution for a violation of § 18.2-192 may be had in any county or city where a credit card number is used, is attempted to be used, or is possessed with intent to violate § 18.2-193, 18.2-195, or 18.2-197.*

(Emphasis added).

As noted above, following the Supreme Court's decision in Meeks, the General Assembly amended Code § 18.2-198.1 and added the final sentence. Previously, the statute provided that "venue for credit card theft was proper any place the defendant commit[ted] 'any act in furtherance of the crime.'" Gheorghiu v. Commonwealth, 280 Va. 678, 685 (2010). With the General Assembly's amendment, however, the Commonwealth may currently prosecute credit card theft and credit card fraud "in any county or city where a credit card number is used, is attempted to be used, or is possessed with intent to violate § 18.2-193, 18.2-195, or 18.2-197." Code § 18.2-198.1.

To summarize, these offenses were alleged to have taken place after the 2008 amendment to Code § 18.2-198.1. Therefore, venue in the present case was proper in Arlington County only if the Commonwealth produced evidence sufficient to give rise to a strong presumption that

Bryant possessed the unused stolen credit card with the intent to commit credit card fraud in that jurisdiction. Bryant argues, however, that Arlington County was not a proper venue for the prosecution of his credit card theft charge related to the unused credit card because the evidence was insufficient to prove his intent to commit credit card fraud using that card in Arlington County. In support of that argument, Bryant contends that the circuit court erroneously relied upon his use of three other stolen credit cards at the CVS to find that he possessed the unused credit card with the intent to commit credit card fraud.

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." Hughes v. Commonwealth, 18 Va. App. 510, 519 (1994) (quoting David v. Commonwealth, 2 Va. App. 1, 3 (1986)). "The state of mind of an accused may be shown by his conduct and by his statements." Id. (citing Long v. Commonwealth, 8 Va. App. 194, 198 (1989)). Furthermore, "[t]he question of [a defendant's] intent must be determined from the outward manifestation of his actions leading to usual and natural results, under the peculiar facts and circumstances disclosed. This determination presents a factual question which lies peculiarly within the province of the [fact finder]." Id. (quoting Ingram v. Commonwealth, 192 Va. 794, 801-02 (1951)).

Reviewing the record, we hold that the evidence was sufficient for the circuit court to conclude that Bryant possessed the unused credit card with the intent to commit credit card fraud. As the circuit court noted in reaching its verdict, the evidence reflects that Bryant possessed four stolen credit cards and used three of them at an Arlington County CVS on Jefferson Davis Highway. The evidence also reflects that Bryant possessed all of the credit cards without Ms. Mais's permission. Bryant went on to use three of the four credit cards to purchase five $100 gift cards in separate transactions. He then repeatedly lied to the police about his

identity and how he came to possess the credit cards. Accordingly, the Commonwealth presented sufficient circumstantial evidence giving rise to both a reasonable inference beyond a reasonable doubt that Bryant possessed the unused credit card with the requisite intent to use it without Ms. Mais's authorization as well as a strong presumption that he intended to do so in Arlington County. Therefore, the circuit court did not err in concluding that venue was proper in that court to prosecute Bryant for the credit card theft charge related to the unused credit card.

### III. CONCLUSION

For the reasons stated above, we affirm the judgment of the circuit court with respect to all three assignments of error. However, we remand the case to the circuit court for the limited purpose of correcting the scrivener's error in the sentencing order entered in Case No. CR16-1616, which states that Bryant was convicted of credit card theft rather than credit card fraud.

Affirmed and remanded.