UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Athey and Fulton
Argued by videoconference

PRESTON GILES EDWARDS

MEMORANDUM OPINION* BY
v.      Record No. 0091-21-2        JUDGE GLEN A. HUFF
APRIL 26, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Timothy J. Hauler, Judge Designate

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

After a bench trial in the Colonial Heights Circuit Court (the "trial court"), Preston Giles

Edwards ("appellant") was convicted of one count of malicious wounding in violation of Code

§ 18.2-51. On appeal, appellant argues that the Commonwealth's evidence was insufficient to

prove two elements required under the statute: malice and the specific intent to maim, disfigure,

disable, or kill. This Court disagrees and affirms the trial court's judgment.

I. BACKGROUND

On appeal, this Court reviews the facts "in the light most favorable to the

Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472

(2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). Further, this Court

disregards "the evidence of the accused in conflict with that of the Commonwealth, and regard[s]

as true all the credible evidence favorable to the Commonwealth and all fair inferences to be

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

drawn therefrom." *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). So viewed, the evidence is as follows:

At the time of the incident at issue, appellant and Deborah Miller ("Miller") had dated for approximately four years. On March 24, 2020, after drinking alcohol and discussing an upcoming trip to Florida, appellant and Miller got into an argument over the trip. Suddenly, appellant got on top of Miller and began pushing her down on the bed with both hands over her mouth. Miller described appellant as a "big man"—heavier than her and approximately one foot taller. Unable to breathe, Miller bit appellant's hand covering her mouth. Appellant exclaimed, "Oh, you wanna bite," and retaliated by biting Miller on her right arm. Miller got up from the bed and felt a "jolt" on the back of her head. Miller believed appellant struck the back of her head with his open hand. Miller next remembered waking up later that night and sending a picture of her bruised face to a friend.

The following morning, on March 25, 2020, Miller contacted the same friend, telling her she worried about being alone with appellant. She stayed at appellant's apartment for the day and slept in bed. She felt dizzy when standing, and her head "felt weird." Appellant apologized to Miller but made her promise not to contact law enforcement. That evening, Miller's sister picked her up.

On March 26, 2020, Miller went to the hospital to receive an x-ray of her head. After Miller recounted the incident, the hospital staff contacted the police. Officer Davis, with the Colonial Heights Police Department, arrived at the hospital to investigate. At trial, Officer Davis testified to Miller's injuries, noting "visible bruising and swelling to her face." Miller's right eye was "purple and swollen shut," while her left eye suffered from "obvious hemorrhaging." Miller had bite marks and bruising on her right arm. According to Miller, it took two months for her injuries to heal.

Appellant's version of the facts diverges entirely from Miller's. According to him, on March 24, 2020, Miller became intoxicated while the couple argued over the Florida trip. Appellant suggested that, because of her drinking problem, Miller should not go on the trip. Miller responded by threatening to invite other men over to appellant's house if he left on the trip without her. She continued to drink that evening and eventually put the liquor bottle up to appellant's mouth. When appellant refused to drink, Miller became physically aggressive and attacked him. Miller got on top of appellant and bit down on his finger. To get Miller to release his finger, appellant bit her arm. Miller began following appellant "around the house drunk, falling through things." Appellant claimed she fell on his video game console and tripped over her own feet, denting a wall. When questioned at trial whether he injured Miller in any way, other than biting her arm, appellant replied, "Nothing else." The trial court found appellant's testimony about the March 24, 2020 incident "utterly, utterly without credibility."

Following a bench trial on October 20, 2020, appellant was convicted of malicious wounding in violation of Code § 18.2-51. The trial court subsequently sentenced appellant to five years in prison with three years suspended. This appeal followed.

## II. STANDARD OF REVIEW

"When considering a challenge to the sufficiency of the evidence to sustain a conviction, . . . [t]his Court will only reverse the judgment of the trial court if the judgment is plainly wrong or without evidence to support it." *Burkeen v. Commonwealth*, 286 Va. 255, 258 (2013) (alterations in original) (quoting *Clark v. Commonwealth*, 279 Va. 636, 640 (2010)). Thus, this Court need only determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wilson v. Commonwealth*, 53 Va. App. 599, 605 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If so, the conviction stands.

- 3 -

III. ANALYSIS

Appellant was convicted of malicious wounding in violation of Code § 18.2-51. To convict a person of malicious wounding, the Commonwealth must prove malice and the specific intent to "permanently" injure, or more specifically, "the intent to maim, disfigure, disable, or kill." *Johnson v. Commonwealth*, 53 Va. App. 79, 99 (2008); Code § 18.2-51. Appellant argues the Commonwealth failed to prove either of these elements and his actions amounted to nothing more than misdemeanor domestic assault and battery. This Court disagrees.

Appellant first contends that he lacked the malice required to be convicted of malicious wounding. "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019) (quoting *Burkeen*, 286 Va. at 259). A factfinder may infer malice from "words[] or . . . acts and conduct which necessarily result in injury." *Id.* Ultimately, the existence of malice "is a question of fact to be determined by [the factfinder]." *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)).

A reasonable factfinder could infer appellant acted maliciously. He purposefully assailed Miller, pinning her to the bed with both hands over her mouth. Because Miller was unable to breathe, she bit appellant's hand. In retaliation, appellant made the conscious decision to bite Miller's arm and said, "Oh, you wanna bite," evincing his intent to harm her. On brief, appellant even acknowledges that he struck Miller with an open hand on the back of the head. The Commonwealth provided ample evidence from which a reasonable factfinder could conclude that appellant purposefully harmed Miller.

Moreover, while appellant tries to argue that at least some of his actions were justified—notably, his retaliatory bites—his argument rests solely on his own version of events, which the trial court flatly rejected. And even if true, his version of events provides no justification for his

other purposeful actions, including covering Miller's mouth with his hands or striking the back of her head. Accordingly, this Court rejects appellant's argument that the evidence did not establish malice.

As his second argument, appellant contends the evidence was insufficient to prove the requisite intent for a malicious wounding. But, again, appellant's argument fails. To convict a person of malicious wounding, the Commonwealth must also prove "the intent to maim, disfigure, disable, or kill." Code § 18.2-51. The accused, then, must have intended to "permanently, not merely temporarily, harm another person." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Burkeen*, 286 Va. at 259).[1] "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." *Id.* (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). In inferring intent, one may "infer that every person intends the natural, probable consequences of his or her actions." *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011).

Here, several factors provided evidence that appellant, at the very least, intended to harm Miller permanently. First, appellant attacked her repeatedly. He pinned her to the bed with his hands blocking her mouth, bit her arm, and struck the back of her head hard enough for her to lose her memory. Appellant would prefer the Court look at his case as one of a single slap and retaliatory bite. Yet the facts accepted by the trial court show otherwise. Rather than a single isolated act of retaliatory aggression, appellant's actions consisted of consecutive attacks. *See Ramos*, 71 Va. App. at 162-63 (holding that even a single blow can constitute malicious wounding when the victim "had already been kicked multiple times and beaten with poles, a board, and a shield").

---

[1] A resulting permanent injury is not required to satisfy the specific intent element under Code § 18.2-51, only the intent to inflict one. *Perkins*, 295 Va. at 330.

Second, appellant attacked vulnerable areas of Miller's body where she was less capable of defending herself. In *Perkins*, the Virginia Supreme Court found it significant that the appellant struck the victim "in a vulnerable area (the occipital region of his skull on the back of his head)." 295 Va. at 331. There, the appellant "delivered the blow while [the victim] was defenseless with his back turned," knocking him unconscious. *Id.* at 331-32. Similarly, appellant here first pressed down on Miller's mouth—which kept her from breathing—before striking the *back* of her head with such force that it blacked out a portion of her memory and left her dazed even into the next day.

Third, the size disparity between the parties represented a heightened threat to Miller. *See Dawkins v. Commonwealth*, 186 Va. 55, 62 (1947) ("Considering the differen[ce] in the size and strength of the two men, the method of attack was inexcusable."). Being both heavier and taller than Miller, appellant used his body to pin Miller to the bed and cover her mouth using both hands until she struggled to breathe.

Finally, Miller's resulting injuries are relevant to the analysis. *See Burkeen*, 286 Va. at 261 (referencing the serious nature of the injury when analyzing intent). She suffered bruising and swelling to the face, swelling in one eye, and hemorrhaging to the other. And again, appellant's strike to her head blacked out a portion of her memory and left her dazed the following day. Two days after the incident, Miller still had visible bite marks and bruising on her right arm. Her injuries took approximately two months to heal. The magnitude of her injuries evinces appellant's intent to significantly—indeed, permanently—injure her.

Considering the consecutive nature of appellant's attacks, the vulnerable areas of Miller's body he assaulted, the size disparity between them, and the significant injuries appellant inflicted, the trial court's conclusion that appellant intended to permanently injure her was neither plainly wrong nor without evidence to support it.

## IV.  CONCLUSION

For the foregoing reasons, this Court holds that the evidence was sufficient to support appellant's conviction of malicious wounding and affirms the trial court's judgment.

*Affirmed*.